James T. CAMPBELL, Appellant,

v.

DEPARTMENT OF HEALTH AND
HUMAN SERVICES and Eli Lilly
and Company.

No. 81–1839.

United States Court of Appeals,
District of Columbia Circuit.

Argued Feb. 2, 1982.

Decided June 25, 1982.

Katherine Anne Meyer, Washington, D. C., with whom Alan B. Morrison, Washington, D. C., was on the brief, for appellant.

Patricia J. Kenney, Asst. U. S. Atty., Washington, D. C., with whom Charles F. C. Ruff, U. S. Atty., Washington, D. C., at the time the brief was filed, Royce C. Lamberth, Kenneth M. Raisler, and Michael J. Ryan, Asst. U. S. Attys., Washington, D. C., were on the brief, for appellee Dept. of Health and Human Services.

Richard Frank Kingham, Washington, D. C., with whom Alvin J. Lorman, Washington, D. C., was on the brief, for appellee Eli Lilly and Co.

Before WALD, MIKVA and GINSBURG, Circuit Judges.

GINSBURG, Circuit Judge:

Exemption 7(A) of the Freedom of Information Act (FOIA), 5 U.S.C. § 552(b)(7)(A), permits an agency to withhold from public disclosure "investigatory records compiled for law enforcement purposes, but only to the extent that the production of such records would ... interfere with enforcement proceedings." This case presents the novel question whether the Food and Drug Administration (FDA) may rely upon Exemption 7(A) in justification of a blanket refusal to release to a third party any information *submitted by a potential target* of an FDA enforcement action. The district court answered that question in the affirmative. 518 F.Supp. 1114 (D.D.C.1981). We conclude that the district court's response was too quick and categorical to comport with the congressional directive. That directive, we hold, requires a more particularized showing by the government and a more precise examination by the district court before a judgment may be made that the production sought would "interfere with enforcement proceedings."

## I.

Appellant Campbell held various technical positions with appellee Eli Lilly and Company for a quarter-century. From April 1973 through January 8, 1978, he worked on research teams studying the drugs darvon, aprindine, and monensin.[1] In late 1977, Campbell informed Lilly's staff counsel that his superiors had failed to report to the FDA adverse reaction data and toxicological information concerning these drugs.[2] Following an in-house investigation, Lilly placed Campbell on unpaid leave and ultimately discharged him. Campbell sought damages and reinstatement in the Indiana state courts. His complaint was dismissed on the ground that Indiana law does not recognize a cause of action for retaliatory discharge in the circumstances Campbell's case presented. *Campbell v. Eli Lilly and Co.*, 413 N.E.2d 1054, 1059–62 (Ind.App.1980), *transfer denied,* 421 N.E.2d 1099 (Ind.1981). Campbell also informed the FDA of his allegations that Lilly had not reported to the agency safety- and health-related problems associated with its products. The agency thereupon commenced an investigation which is still in progress.

On July 21, 1980, while appellate review of his state court action was pending, Campbell sought access to four categories of documents concerning the FDA investigation. His letter request asked the agency for an opportunity to inspect and copy:

---

1. Darvon is a widely prescribed analgesic or pain reliever. Aprindine, an investigational new drug not approved for marketing, has been used experimentally in the treatment of cardiac arrhythmia, or irregular heartbeat. Monensin is a growth stimulant commonly fed to cattle and poultry bred for human consumption.

2. Lilly had a legal obligation to report such data and information to the FDA. *See* 21 U.S.C. §§ 355(j), 360b(*l*); 21 C.F.R. § 312.-1(a)(5)–(6) (1981).

1. Any internal pre-investigation memoranda prepared by Lilly officers or employees which were submitted to the FDA;

2. Any written statements provided by present or former officers or employees of Lilly[;]

3. Any depositions or other statements given to the FDA by present or former officers or employees of Lilly[;]

4. Any letters, memoranda or other transmittals from Lilly to the FDA concerning the investigation, together with enclosures thereto.

Joint Appendix (J.A.) 6. This specification was designed to elicit only those documents provided by or available to Lilly or its past and present employees, not internal FDA materials.[3] See Brief of Plaintiff-Appellant at 5.

On August 14, 1980, the FDA notified Campbell that it had no records responsive to category 1 of his request and invoked Exemptions 4[4] and 7(A)–(C)[5] as grounds for withholding information in the other categories. J.A. 73–74. Campbell filed an administrative appeal. When the agency failed to resolve the appeal within twenty working days, see 5 U.S.C. § 552(a)(6)(A)(ii), Campbell sought injunctive relief from the district court on November 2, 1980.[6]

On February 2, 1981, the district court granted Lilly's unopposed motion to intervene as a party-defendant. J.A. 33. Pursuant to its established policy requiring the submitter of confidential commercial information to defend the trade secret status of such materials in FOIA litigation, see 21 C.F.R. § 20.53 (1981),[7] the FDA had notified the company of Campbell's resort to judicial remedies. The applicable regulation required Lilly, a potential target of enforcement proceedings, to itemize, index, and justify the withholding of the documents for which Exemption 4 was claimed. Alleging that providing Lilly access to these materials would alert the company to the direction, focus, and scope of the investigation, the government sought to defer the trade secrets issue pending resolution of the Exemption 7 question. J.A. 36.

On February 25, 1981, the agency submitted three public and four in camera affidavits in support of its position that all documents in its possession responsive to Campbell's FOIA request are records properly withheld under Exemption 7. On April 6, the government moved for summary judgment on this basis. On July 21, the district court granted this motion and entered an order dismissing the case. Campbell thereupon appealed, contending that the court had misconstrued Exemption 7

---

3. Presumably at least some of the material generated within the FDA might be exempt from disclosure under 5 U.S.C. § 552(b)(5), which authorizes the withholding of "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency."

4. Exemption 4 authorizes the withholding of "trade secrets and commercial or financial information obtained from a person and privileged or confidential." 5 U.S.C. § 552(b)(4). The district court did not address this issue. Campbell concedes that this case must be remanded for resolution of the Exemption 4 question even if he prevails on Exemption 7. Reply Brief of Plaintiff-Appellant at 9 n.2.

5. Exemptions 7(B) and 7(C) authorize the withholding of "investigatory records compiled for law enforcement purposes, but only to the extent that the production of such records would ... (B) deprive a person of a right to a fair trial or an impartial adjudication, [or] (C) constitute

an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(B)–(C). For the text of Exemption 7(A), see supra p. 257.

The district court accepted the FDA's assertion that Exemptions 7(B) and 7(C) justified refusal to disclose the requested information, see 518 F.Supp. at 1115, but did not explain why it agreed with the agency. Neither the FDA nor Lilly offers substantive arguments on these provisions. Campbell discusses them only in a footnote. See Brief of Plaintiff-Appellant at 15 n.2.

6. The FDA ultimately resolved the administrative appeal adversely to Campbell on January 9, 1981. J.A. 76–77.

7. This regulation has been in effect since March 22, 1977. See 42 Fed.Reg. 15553, 15621 (1977). A slightly different version, previously codified at 21 C.F.R. § 4.53, had been adopted on December 24, 1974. See 39 Fed.Reg. 44602, 44647 (1974).

and denied him a meaningful opportunity to participate in the litigation.[8]

## II.

■ To establish that Exemption 7 permits withholding documents in its possession, an agency must show (1) that the requested documents are "investigatory records compiled for law enforcement purposes," and (2) that release of the material would have one of the six adverse consequences specified in the Act. *FBI v. Abramson*, —— U.S. ——, ——, 102 S.Ct. 2054, 2059, 72 L.Ed.2d 376 (1982). Campbell concedes that the documents he seeks satisfy the first requirement: the FDA obtained the requested information in connection with its investigation of Campbell's allegations that Lilly had failed to submit reports required by law concerning the safety of darvon, aprindine, and monensin. The controversy before us centers upon whether disclosure of these records would, as stated in Exemption 7(A), "interfere with enforcement proceedings."

■ Both sides press extreme positions on the showing an agency must make to establish the requisite interference. Campbell asserts that Exemption 7(A) applies "only on a document-by-document basis." Brief of Plaintiff-Appellant at 10. The government maintains, and the district court ruled, that an agency carries its burden simply by demonstrating that "the withheld information was clearly related to [an ongoing investigation]." 518 F.Supp. at 1115. We reject both formulations. Campbell's would impose an unreasonably oner-

ous standard upon the agency; the FDA's would automatically shield from disclosure all records relating to an ongoing investigation.[9] Congress, we conclude, based on the words it employed and the relevant legislative history, did not authorize blanket exemption for such records. It required something more. We hold that, to prevail under Exemption 7(A), the government must show, by more than conclusory statement, how the particular kinds of investigatory records requested would interfere with a pending enforcement proceeding.

### (A)

Throughout this litigation, in the district court and on appeal, the FDA has responded to a case other than the one Campbell brought. To assure that, on remand, the government will advert specifically to the case at hand, we underscore the nature of Campbell's request.

This is not a situation in which the potential target of an enforcement action seeks access to records not in its possession. Instead, a third party is attempting to procure materials that a target prepared and submitted to the agency. Campbell confined his FOIA request to four categories of documents "obtained by the Food and Drug Administration in connection with the FDA's investigation of Eli Lilly and Company concerning Lilly's suppression of adverse drug reaction data and/or toxicological information regarding the drugs darvon, apridine [sic] and monensin." J.A. 6. He

---

**8.** At the time summary judgment was granted and the case dismissed, Campbell had several motions pending to compel the government to respond to discovery requests. The district court never ruled on these motions. In addition, Campbell unsuccessfully sought access to the in camera affidavits submitted by the FDA.

Since the record contains and Campbell offers no basis to question the agency's veracity or good faith, we accept the FDA's representation that it has no documents responsive to category 1 of Campbell's request. *See Barney v. IRS*, 618 F.2d 1268, 1274 (8th Cir. 1980) (per curiam). *Cf. Stephenson v. IRS*, 629 F.2d 1140, 1145 (5th Cir. 1980) (where subsequent developments suggest that certain withheld informa-

tion was not in fact exempt under 7(A), court may order submission of more detailed justification of agency position).

**9.** Under the standard urged by the government and adopted by the district court, the in camera affidavits the FDA submitted were superfluous. Campbell does not dispute the pendency of an investigation, and his request is confined to documents submitted by the target firm, its officers and employees. The public affidavits (particularly that of FDA Associate Commissioner Joseph P. Hile, J.A. 78) show a clear relationship between the investigation and the withheld information.

sought access to statements, depositions, letters, memoranda, and other written materials prepared by present or former Lilly officers or employees. *See supra* p. 258. He limited his request to information Lilly personnel submitted to the agency after the initiation of the FDA investigation.[10] Campbell sought no documents supplied by sources other than Lilly personnel. He did not request any materials developed by the agency in the course of its investigation. *See supra* note 3 and accompanying text.

Remarkably, in light of a request so circumscribed, the government's submissions appear to assume that Campbell seeks a full accounting of the investigation in progress. For example, the in camera affidavits describe the course and conduct of the investigation and the various sources from which evidence was gathered. Three of these affidavits contain lists of records, some acquired from sources other than Lilly or its present and former officers or employees, and some prepared by FDA officials. *No submission lists clearly and discretely the agency records responsive to Campbell's request.*

Similarly, all of the affidavits repeat the government's dominant assertion that disclosure of the documents could aid Lilly or other potential targets in determining the scope, direction, and focus of the investigation. This may well be true of information gathered from sources outside the Lilly firm and materials generated by the agency itself. However, the government's submissions do not explain how information submitted by the company's present and former officers or employees since the FDA began its investigation could reveal the direction of the investigation to Lilly or alert it to anything it does not know already.

The government's submissions are similarly unilluminating with regard to the prospects for tipping off other targets. In addition, the record does not indicate how disclosure to other persons of materials that Lilly has turned over to the agency would lead to alteration or destruction of evidence. The government makes that claim but, consonant with the style it has adopted for its other assertions of interference with the investigation, it offers not even a slim bill of particulars.[11]

Instead of describing the range and depth of its investigation, the government should have responded to the FOIA request as Campbell framed it. The response should have focused on documents Lilly personnel submitted after the FDA began its investigation of Campbell's charges. The references to information supplied by other sources or generated within the agency itself were not warranted and may have conveyed to the district court an inaccurate impression of the dimensions of this case. The FDA should have explained how the material Campbell in fact sought, and only that material, would reveal to potential targets—Lilly or others—the scope, direction, and focus of the inquiry or otherwise interfere with the investigation. On remand, in the discretion of the district court, such explanations may be made in camera. *See infra* pp. 265–266.

With a view to this restatement of the claim Campbell presented—a claim centered on information Lilly provided after the FDA launched its investigation, not a sweeping demand for the variety of information the agency has gathered—we turn to the guides to decision we have found in the legislative history of Exemption 7(A) and in the relevant case law.

---

**10.** The FDA commenced its investigation on July 19, 1979. Affidavit of Joseph P. Hile ¶ 6, J.A. 79.

**11.** The government cites as "[a]n equally important reason" for withholding the records at issue the possible effect on the public and on the market position of the companies involved of an announcement of the preliminary results

of the FDA investigation. Brief for Federal Appellee at 12. While these considerations would support the agency's reluctance to respond to an indiscriminate request for investigative records, Campbell explicitly disavows any interest in learning the preliminary results of the FDA review of his allegations. *See supra* text accompanying notes 3 & 10.

(B)

The legislative history of Exemption 7(A), limited as it is,[12] nonetheless contains persuasive indications that the government must show something more than a direct relationship between agency records and a pending investigation in order to demonstrate that disclosure would interfere with enforcement proceedings. As originally enacted, Exemption 7 authorized agencies to withhold "investigatory files compiled for law enforcement purposes except to the extent available by law to a private party." Act of July 4, 1966, Pub.L. No. 89–487, 80 Stat. 250, 251. The committee reports accompanying the bill explained that the exemption would protect "the Government's case in court," S.Rep. No. 813, 89th Cong., 1st Sess. 9 (1965), *reprinted in* Subcommittee on Administrative Practice and Procedure, Senate Committee on the Judiciary, 93d Cong., 2d Sess., Freedom of Information Act Source Book: Legislative Materials, Cases, Articles 36, 44 (Committee Print 1974) [hereinafter cited as 1974 Source Book], by preventing "a private party [from obtaining] indirectly any earlier or greater access to investigatory files than he would have directly in such litigation or proceedings," H.R.Rep. No. 1497, 89th Cong., 1st Sess. 11 (1966), U.S.Code Cong. & Admin. News, pp. 2418, 2428, *reprinted in* 1974 Source Book at 22, 32.[13]

In 1974, Congress undertook an extensive revision of the FOIA. The bills that ultimately reached the floor suggested no change in Exemption 7.[14] During the Senate debate, however, Senator Hart introduced an amendment modeled after a recommendation of the Administrative Law Section of the American Bar Association. The ABA proposal included the exact language of the current exemption 7(A).[15] That proposal made two alterations in the law enforcement exception. First, it changed the focus of the exception from "investigatory files" to "investigatory records." Second, it required the government to show that release of such records would

12. *See FBI v. Abramson, supra,* —— U.S. at ——, 102 S.Ct. at 2065 (O'Connor, J., dissenting) (characterizing legislative history of Exemption 7 as a whole as "rather sparse").

13. The floor debate on this provision was unenlightening. The Senate passed the original FOIA by voice vote without debate. 111 Cong. Rec. 26821 (1965). That chamber had approved a predecessor bill containing a somewhat different investigatory files exemption the previous year in similar fashion. *See* 1974 Source Book at 103–09. On reconsideration, the Senate substituted the language ultimately enacted in response to concern that the initial language might lead to premature disclosure of statements of agency witnesses, particularly in unfair labor practice cases. *Id.* at 109–13; *see generally NLRB v. Robbins Tire & Rubber Co.,* 437 U.S. 214, 225–26, 98 S.Ct. 2311, 2318–19, 57 L.Ed.2d 159 (1978). The only substantive comment on the House floor explained that "[t]he FBI would be protected under exemption No. 7 prohibiting disclosures of 'investigative files.'" 1974 Source Book at 82 (remarks of Rep. Gallagher). Other House references to Exemption 7 appear in general recitations of the FOIA exceptions. *See id.* at 54, 61, 74 (remarks of Reps. King, Fascell & Dole).

14. Two companion bills introduced in 1973, S. 1142 and H.R. 5425, which were predecessors of the legislation enacted the following year, would have substituted a new investigatory records exemption covering, in pertinent part, "investigatory records compiled for any specific law-enforcement purpose the disclosure of which is not in the public interest, except to the extent that—(A) any such investigatory records are available by law to a party other than an agency." Although the hearings on these proposals demonstrated considerable support for some alteration of Exemption 7, the committees apparently concluded that these particular changes might engender needless confusion. *See NLRB v. Robbins Tire & Rubber Co.,* 437 U.S. 214, 230–31 & n.11, 233 & n.14, 98 S.Ct. 2311, 2321 & n.11, 2322 & n.14, 57 L.Ed.2d 159 (1978).

15. After the Senate adopted the Hart amendment, the conference committee made several changes in other aspects of the revised Exemption 7 at the behest of President Ford. *See* H.R.Rep.No.1380, 93d Cong., 2d Sess. 11–12 (1974), *reprinted in* Subcomm. on Government Information & Individual Rights, House Comm. on Government Operations, and Subcomm. on Administrative Practice & Procedure, Senate Comm. on the Judiciary, 94th Cong., 1st Sess., Freedom of Information Act and Amendments of 1974 (P.L. 93–502) Source Book: Legislative History, Texts, and Other Documents 217, 229–30 (Joint Comm. Print 1975) [hereinafter cited as 1975 Source Book].

result in one of several specified harms in order to justify nondisclosure.

Senator Hart explained that the new Exemption 7(A) was meant to apply

> whenever the Government's case in court—a concrete prospective law enforcement proceeding—would be harmed by the premature release of evidence or information not in the possession of known or potential defendants. This would apply also where the agency could show that the disclosure of the information would substantially harm such proceedings by impeding any necessary investigation before the proceeding.

1975 Source Book, *supra* note 15, at 333. The amendment had a particular purpose. It would restore the intent of the Congress that had enacted the original FOIA by rejecting four decisions of this court. *Id.* at 335 (remarks of Sen. Kennedy), 349 (colloquy between Sens. Kennedy & Hart). Those decisions had applied Exemption 7 to materials related to investigations that had been terminated and to cases in which no enforcement action was contemplated.[16] *See also id.* at 335 (remarks of Sen. Kennedy), 378 (remarks of Rep. Moorhead).

President Ford vetoed the bill, in part because he believed that the revised Exemption 7 would subject the millions of pages of investigatory files to "compulsory disclosure at the behest of any person unless the Government could prove to a court—separately for each paragraph of each document—that disclosure 'would' cause a type of harm specified in the amendment." *Id.* at 484. Various legislators argued that the President had exaggerated the administrative burden and deleterious effects of the changes. In particular, Senator Hart emphasized that Exemption 7(A) would eliminate "agency incentive to commingle various information into one enormous investigatory file and then claim it is too difficult" to separate exempt from nonexempt records. *Id.* at 451. *See also id.*

at 406 (remarks of Rep. Moorhead), 413 (remarks of Rep. Reid), 420–21 (remarks of Rep. Erlenborn), 424 (remarks of Rep. Horton), 440 (remarks of Sen. Kennedy). Congress then overrode the veto.

Congress did not have specifically in view the novel case of a request for information supplied to an agency by the target of an investigation when it considered current Exemption 7(A). The history of revised Exemption 7, however, strongly suggests that the standard urged by the government and adopted by the district court is incompatible with the congressional intent to heighten or refine agency attention to FOIA requests. If an agency may withhold any document merely because it relates to a pending investigation, the 1974 version of Exemption 7(A) would apply to everything properly placed in investigatory files, yet Congress plainly mandated a focus upon records, not files. Furthermore, the "clearly related to [an ongoing investigation]" test fails to distinguish between records generated within the agency or otherwise "not in the possession of known or potential defendants," the typical Exemption 7(A) situation to which Senator Hart referred, and documents submitted to the government by such targets in the course of an investigation. By lumping the two together, the test would render it unnecessary for the agency to show in the latter case precisely how the disclosure would "imped[e] any necessary investigation before the [law enforcement] proceeding." *See supra* p. 262.

### (C)

Although we conclude that the district court's ruling rests upon an overly expansive reading of Exemption 7(A), we cannot attribute to the provision the meaning Campbell urges, which would require the FDA to justify on a document-by-document basis its withholding of any of the records

---

**16.** The decisions at issue were *Center for Nat'l Policy Review on Race and Urban Issues v. Weinberger*, 502 F.2d 370 (D.C.Cir.1974); *Ditlow v. Brinegar*, 494 F.2d 1073 (D.C.Cir.1974); *Aspin v. Department of Defense*, 491 F.2d 24 (D.C.Cir.1973); and *Weisberg v. United States Dep't of Justice*, 489 F.2d 1195 (D.C.Cir.1973) (en banc), *cert. denied*, 416 U.S. 993, 94 S.Ct. 2405, 40 L.Ed.2d 772 (1974).

he requested. Congress rejected that interpretation in overriding President Ford's veto of the 1974 FOIA amendments, and judicial decisions construing the exemption have followed Congress' understanding.

The leading case under Exemption 7(A) is *NLRB v. Robbins Tire & Rubber Co.,* 437 U.S. 214, 98 S.Ct. 2311, 57 L.Ed.2d 159 (1978). In *Robbins Tire,* an employer charged with committing unfair labor practices sought, in advance of the administrative hearing on those charges, to obtain copies of statements submitted to the NLRB by all prospective witnesses. The Board denied the request, claiming that prehearing disclosure would interfere with the enforcement proceedings. The employer argued that the Board had failed to show specifically that release of the particular statements would impede the investigation.

The Court, in a three-step analysis, upheld the agency's position. First, it observed that the language of Exemption 7(A), unlike the terms of other subdivisions of the investigatory records exception, "appears to contemplate that certain generic determinations might be made." *Id.* at 223–24, 98 S.Ct. at 2317–18.[17] Second, the Court reviewed the legislative history and concluded that Exemption 7(A)

> was designed to eliminate "blanket exemptions" for Government records simply because they were found in investigatory files compiled for law enforcement purposes .... Congress did not intend to prevent the federal courts from determining that, with respect to particular kinds of enforcement proceedings, disclosure of particular kinds of investigatory records while a case is pending would generally "interfere with enforcement proceedings."

*Id.* at 236, 98 S.Ct. at 2324. Third, the Court examined the possible consequences of prehearing disclosure of statements of prospective witnesses and held that the Board had satisfied its burden of demonstrating that such premature revelation would interfere with enforcement proceedings. *Id.* at 236–42, 98 S.Ct. at 2323–27.[18]

The Supreme Court's analysis in *Robbins Tire* is sufficient to dispose of Campbell's contention that the FDA must justify its withholding of each and every document responsive to his request.[19] Under *Robbins Tire,* the agency need only show that release of the particular kinds of records a requester seeks would interfere with an actual or contemplated enforcement action. At the same time, that decision does not authorize an agency to refuse to disclose any record compiled in anticipation of enforcement action merely because the record has found its way into an investigative file. If a direct relationship between an active

---

**17.** The Court noted that other portions of this exception refer to situations in which disclosure might deprive particular persons of their right to a fair hearing or privacy, for example, and thus suggest the need for the government to show "that the factors made relevant by the statute are present in each distinct situation." Exemption 7(A), on the other hand, addresses possible obstruction of enforcement proceedings, apparently a more general concern.

**18.** The Court expressed particular concern that prehearing disclosure would discourage prospective witnesses from cooperating with the Board for fear of coercion from one or another party to a labor dispute.

**19.** Campbell cites three decisions in support of his contention that release of documents to which a potential target has access cannot interfere with enforcement proceedings. Even if all potential targets of the current FDA investigation do have access to the records he seeks, a question we are not positioned to address,

Campbell's reliance on these decisions is misplaced. In *Coastal States Gas Corp. v. Department of Energy,* 617 F.2d 854, 870 (D.C.Cir. 1980), this court found that the government had failed to demonstrate the pendency of an investigation. Release of the documents at issue therefore could not have interfered with an enforcement proceeding. In *Wellford v. Hardin,* 444 F.2d 21, 24 (4th Cir. 1971), decided under the original Exemption 7, the investigation had terminated and no enforcement action was contemplated. Under the current law, in those circumstances, the information would not be protected. Finally, in *Education/Instruction, Inc. v. United States Dep't of Hous. & Urban Dev.,* 471 F.Supp. 1074, 1078 (D.Mass. 1979), the agency had submitted the document in question to a court in another case. Accordingly, the information at issue was a matter of public record, unlike the material Campbell has requested.

investigation and withheld information constituted a sufficient predicate for the invocation of Exemption 7(A), the Court in *Robbins Tire* would not have examined the special risks entailed in premature disclosure of statements of prospective witnesses in NLRB proceedings, the particular kind of records at issue in that case. Instead, the Court would simply have held those statements clearly related to a concrete enforcement matter and, on that account, with no need for further inquiry, properly withheld.[20]

Even the decisions relied upon by the FDA suggest that the district court acted with unwarranted haste in dismissing Campbell's complaint. For example, the court in *Stephenson v. IRS*, 629 F.2d 1140 (5th Cir. 1980), vacated a grant of summary judgment for the government because the affidavit describing the withheld documents afforded an inadequate factual basis for the decision. In contrast to this case, all of the decisions the FDA cites involved FOIA requests by actual or potential targets of concrete, prospective enforcement proceedings for materials compiled by the investigative agency or derived from third parties and to which the requester otherwise had no access. *See, e.g., id.* at 1143 n.5 (memoranda of IRS interviews with and records received from third parties, summonses and other documentary requests to such persons, internal memoranda and work sheets of IRS agents, and sworn statements of third parties); *Barney v. IRS*, 618 F.2d 1268, 1271 n.5 (8th Cir. 1980) (per curiam) (copies of all information the IRS compiled on requesters since specified date); *Moorefield v. United States Secret Service*, 611 F.2d 1021, 1022 (5th Cir.) (all documents concerning requester), *cert. denied*, 449 U.S. 909, 101 S.Ct.

283, 66 L.Ed.2d 139 (1980); *Grabinski v. IRS*, 478 F.Supp. 486, 487 (E.D.Mo.1979) (information received from and letters to and from third parties, and memoranda, notes, and work sheets prepared by IRS agents); *Steinberg v. IRS*, 463 F.Supp. 1272, 1273 (S.D.Fla.1979) (internal IRS documents regarding audits and investigations, notes of agents conducting a specific investigation, correspondence between the IRS and other agencies and prospective witnesses).[21]

Two recent district court decisions illustrate the focused analysis of Exemption 7(A) claims contemplated under *Robbins Tire*. In *Parker/Hunter, Inc. v. SEC*, [1981–1982 Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶ 98,279, at 91,778–79 (D.D.C. Apr. 29, 1981), the court required the agency to supplement its initial submissions, which stated only in general terms that disclosure of the requested information could jeopardize future enforcement action by revealing the direction of the investigation and the strength of the evidence. The court pointedly observed that the proffered justification would warrant withholding any document in an open investigatory file, contrary to the holding of *Robbins Tire*. The supplemental affidavit, which the court found adequate to support the agency's position, "describe[d] in detail the material in the SEC files that [was] responsive to each category of plaintiff's request, and describe[d] how disclosure of the material in each category would interfere with enforcement proceedings." *Id.* at 91,778. Similarly, in *OKC Corp. v. Williams*, 489 F.Supp. 576, 583–86 (N.D.Tex.1980), the target of an SEC investigation sought access to fourteen broad categories of agency records. The court

---

**20.** For this reason, we believe that Lilly exaggerates the significance of the statement in *Robbins Tire* that "the release of information in investigatory files prior to the completion of an actual, contemplated enforcement proceeding was precisely the kind of interference that Congress continued to want to protect against." 437 U.S. at 232, 98 S.Ct. at 2322. Similarly, Lilly's reliance upon *Carson v. United States Dep't of Justice*, 631 F.2d 1008, 1018 (D.C.Cir. 1980), is misplaced. *Carson* holds only that the pendency of a specific, prospective enforce-

ment proceeding is a necessary condition for invocation of Exemption 7(A); the decision does not suggest that this condition, in addition to being necessary, is also sufficient.

**21.** The other principal decision cited by the government holds only that the FOIA does not expand the discovery provisions of the Federal Rules of Criminal Procedure. *See United States v. Murdock*, 548 F.2d 599, 602 (5th Cir. 1977).

granted summary judgment for the Commission on thirteen of the categories, which on their face called for portions of the agency's work product concerning the target company. However, the court denied summary judgment with respect to the final category, which covered some items, such as the corporation's annual Form 10K reports, that could not possibly interfere with the investigation.

The unusual facts of the case at hand, moreover, should have signaled to the district court with particular clarity the court's responsibility to insist on a presentation by the FDA tuned to Campbell's request, and the need to apply to the government's affidavits a more rigorous analysis. Unlike the requesters in previous Exemption 7(A) cases, Campbell is not an actual or potential target of an FDA enforcement proceeding who seeks early discovery of the strength of the government's case in order to tailor his defense. Rather, he is a third party seeking information to which a potential target apparently has access and, indeed, has submitted to the agency. This circumstance does not mean that Campbell must prevail in resisting the government's invocation of Exemption 7(A). It does mean, however, that the district court must conduct a more focused and particularized review of the documentation on which the government bases its claim that the information Campbell seeks would interfere with the investigation.

### III.

■ On remand, the district court should require the submission of affidavits and entertain argument addressing the precise terms of Campbell's request. The government's submissions should relate with particularity to the documents submitted to the FDA by Lilly and its present and former officers or employees after that agency commenced its investigation of Campbell's allegations. The government may focus upon categories of records encompassed by the request; a document-by-document response is not required under Exemption 7(A). However organized, the submissions must demonstrate specifically how each document or category of documents, if disclosed, would interfere with the investigation, for example, how revelation of any particular record or record category identified as responsive to Campbell's request would reveal to particular targets, actual or potential, the scope, direction, or focus of the FDA inquiry.

■ Materials submitted to justify withholding the documents Campbell requested may contain information that could itself interfere with subsequent enforcement proceedings. For this reason, the district court, in its discretion, may accept in camera submissions. This court has expressed grave reservations regarding nonpublic government presentations absent sensitive national security concerns. *See, e.g., Yeager v. DEA,* 678 F.2d 315, 323 (D.C.Cir.1982). Accordingly, the district court should attempt to develop as complete a public record as possible. *See Phillippi v. CIA,* 546 F.2d 1009, 1013 (D.C.Cir.1976).

■ At the same time, we recognize that the focus of Exemption 7(A) differs from that of other FOIA exceptions. Generic rather than document-by-document determinations may be made in ruling upon the application of Exemption 7(A). The government must show only that the documents at issue are investigatory records compiled for law enforcement purposes, a matter not in dispute in this case, and that disclosure of each type of record requested would interfere with pending enforcement proceedings. In such a situation, the interests of the adversary process may be outweighed by the agency's legitimate interest in secrecy. *See Barney, supra,* 618 F.2d at 1272–73.

We do not consider the application *vel non* of Exemptions 7(B) and 7(C) because the district court did not explain why it concluded that these provisions authorize withholding the information at issue. *See supra* note 5. As with Exemption 7(A), the government does not meet its burden, nor does the district court discharge its responsibility, through conclusory statements, un-

accompanied by supporting detail, that these exceptions are applicable.[22]

The Exemption 4 issue remains open. *See supra* note 4. In the event that the district court determines documents encompassed by Campbell's request are not covered by Exemption 7, the Exemption 4 issue will be ripe for consideration.[23]

### CONCLUSION

For the reasons stated, we conclude that the district court should not have dismissed Campbell's complaint on the basis of the showing made by the government. Accordingly, we vacate the judgment and remand the case for further proceedings consistent with this opinion.

*So ordered.*

---

**22.** We note that the government may have to make a more specific showing of the applicability of Exemptions 7(B) and 7(C) to particular documents than it does with respect to Exemption 7(A). *See Robbins Tire, supra*, 437 U.S. at 223–24, 98 S.Ct. at 2317–18.

**23.** In its answer following the granting of its motion to intervene, Lilly also raised Exemption 3 as a defense. J.A. 31. This matter is appropriately considered in conjunction with the Exemption 4 claim.