In re DEPARTMENT OF
JUSTICE, Petitioner.

Barbara Ann CRANCER, Appellee,

v.

UNITED STATES DEPARTMENT
OF JUSTICE, Appellant.

Nos. 91–2080, 91–2164.

United States Court of Appeals,
Eighth Circuit.

Submitted Sept. 12, 1991.

Decided Dec. 2, 1991.

Rehearing En Banc Granted,
Opinion Vacated Feb. 12, 1992.

Scott R. McIntosh, Washington, D.C., argued (Stuart M. Gerson and Leonard Schaitman, Washington, D.C., and Stephen B. Higgins, St. Louis, Mo., on the brief), for appellant.

Richard E. Greenberg, Clayton, Mo., argued, for appellee.

Before McMILLAN, Circuit Judge, FLOYD R. GIBSON, Senior Circuit Judge, and WOLLMAN, Circuit Judge.

FLOYD R. GIBSON, Senior Circuit Judge.

In case number 91–2164EM, the Department of Justice (DOJ) appeals the district court's [1] order that it produce a *Vaughn* [2] index to describe records requested by Barbara Ann Crancer (Crancer) pursuant to the Freedom of Information Act (FOIA), 5 U.S.C. § 552 (1988).[3] In case number 91–2080, the DOJ alternatively seeks a writ of mandamus prohibiting the district court from ordering production of the *Vaughn* index. We dismiss the interlocutory appeal and deny the application for a writ of mandamus.

## I.  BACKGROUND

Jimmy Hoffa, the former president of the International Brotherhood of Teamsters, disappeared in Michigan in July 1975. The FBI began and, apparently, is still conducting, an investigation into Hoffa's disappearance. As a result of these investigative efforts, the FBI has accumulated over 13,800 pages of records relating to this matter.

In February 1987, Crancer, who is Hoffa's daughter, filed an FOIA request with the DOJ, seeking materials about an individual who allegedly gave information about Hoffa's disappearance to the FBI. Crancer's request was denied on the basis of Exemption 7(A) of the FOIA, which exempts from disclosure "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information ... could reasonably be expected to interfere with enforcement proceedings." 5 U.S.C. § 552(b)(7)(A).

In February 1989, after all administrative appeals were denied, Crancer filed suit in district court to obtain an order compelling the DOJ to provide her with the documents she requested. While that suit was pending, Crancer submitted a second information request that sought any and all documents relating to the FBI's investigation into Hoffa's disappearance. After this request was denied, Crancer amended her lawsuit to include the broader request.

In June 1990, the DOJ moved for summary judgment; one month later, the district court ordered the DOJ to provide Crancer with a *Vaughn* index within thirty days for her to use in opposing the summary judgment motion. The DOJ moved for reconsideration; the district court refused to rescind its order but did grant the DOJ more time to produce the index. In October 1990, the DOJ asked the district

---

**1.** The Honorable Stephen N. Limbaugh, United States District Judge for the Eastern District of Missouri.

**2.** *See Vaughn v. Rosen,* 484 F.2d 820, 826–28 (D.C.Cir.1973), *cert. denied,* 415 U.S. 977, 94 S.Ct. 1564, 39 L.Ed.2d 873 (1974).

**3.** All future references to the United States Code will be to the 1988 version unless otherwise stated.

court to modify its order and allow the DOJ to provide only the categories of documents contained in the Hoffa file. At the same time, the DOJ submitted a list of nine categories that purported to describe all the documents in the file and an affidavit that described the potential harm to enforcement activities if these categories of documents were released.

The district court denied this request in January of 1991 and gave the DOJ twenty days to prepare a full index and submit it to a magistrate judge for *in camera* review. One month later, the DOJ asked the magistrate judge for alternate relief and proposed to allow the magistrate judge to review the actual documents *in camera.* In March, the magistrate judge denied this request, but afforded the DOJ more time to prepare the index; the index was to be completed in one year, with 25% of the index to be submitted to the court every three months. On April 4, 1991, the DOJ asked the district court to reconsider the magistrate judge's order or, in the alternative, certify the matter for interlocutory appeal. The district court denied these motions two weeks later, and the matter has now been brought to this court.

## II. DISCUSSION

### A. Jurisdiction

We must begin by deciding whether this court has jurisdiction to hear this case, either as an interlocutory appeal or as an action seeking a writ of mandamus. We conclude that the unique characteristics of this case allow us, on this occasion, to decide the issues presented by the DOJ.

Mandamus is an extraordinary remedy that is "available only in those exceptional circumstances amounting to a judicial usurpation of power," *In re Ford Motor Co.,* 751 F.2d 274, 275 (8th Cir.1984), or "where the district court exceeds 'the sphere of its

discretionary power.'" *In re Cessna Distrib. Antitrust Litig.,* 532 F.2d 64, 68 (8th Cir.1976) (quoting *Will v. United States,* 389 U.S. 90, 104, 88 S.Ct. 269, 278, 19 L.Ed.2d 305 (1967)). "Other factors which bear on the appropriateness of mandamus review include the need to correct error which is likely to recur and to provide guidelines for the resolution of novel and important questions." *Central Microfilm Serv. Corp. v. Basic/Four Corp.,* 688 F.2d 1206, 1212 (8th Cir.1982), *cert. denied,* 459 U.S. 1204, 103 S.Ct. 1191, 75 L.Ed.2d 436 (1983).

Crancer contends that it is within the district court's discretion to order creation of a *Vaughn* index, and consequently the court did not act outside its jurisdiction in ordering the DOJ to create an index in this case. The DOJ argues that Exemption 7(A) is different from other exemptions due to case law from the Supreme Court, this court, and other courts of appeal that indicates it is never appropriate for a district court to require a *Vaughn* index when the government agency invokes Exemption 7(A).[4]

The DOJ's argument is a novel one and has not been directly addressed by any court. If the DOJ is correct in its contention that the district court lacked authority to order a *Vaughn* index, then a writ would be the proper remedy. Because the issue of whether the writ is available is intertwined with the merits of this interlocutory matter, we must decide whether the district court had authority to require a *Vaughn*-type index in these circumstances. *Cf. In re Brotherhood of Ry., Airline and S.S. Clerks,* 605 F.2d 1073, 1074 (8th Cir.1979) (per curiam) (deciding to reach merits of dispute because "[i]f the District Court was without jurisdiction to issue the … order, a court of appeals has jurisdiction to dissolve that order by means of a writ of mandamus.").[5]

---

**4.** It is this point that differentiates this case from *Hinton v. Department of Justice,* 844 F.2d 126 (3d Cir.1988), which Crancer proffers to demonstrate that the district court's decision is *not reviewable* through mandamus. In *Hinton,* the DOJ withheld documents based on Exemptions 7(C) and 7(D) and did not contend that the

district court lacked the power or authority to require a *Vaughn* index when Exemption 7(A) is invoked. *See id.* at 128.

**5.** Because of this holding, we need not decide whether the collateral order doctrine allows us to entertain this appeal. Consequently, we dis-

## B. Use of *Vaughn* Indices and Exemption 7(A)

This case is unique because it is not a review of a district court's order that documents be disclosed, nor is it a review of a district court's decision that documents are exempt from disclosure. This case asks us to determine what a district court may do while deciding whether documents are or are not exempt from disclosure.

The district court has the responsibility to review the applicability of the government's claimed exemption *de novo*. 5 U.S.C. § 552(a)(4)(B). This task is difficult because ordinarily a government agency, and not the court, has access to the documents in question. The seminal case of *Vaughn v. Rosen* articulated concerns about the need to find a mechanism that would "permit the court system effectively and efficiently to evaluate the factual nature of disputed information." *Vaughn*, 484 F.2d at 826. From these concerns, the D.C. Circuit created what is now known as a *Vaughn* index, which does nothing more than "correlate statements made in the Government's refusal justification with the actual portions of the document." *Id.* at 827 (footnote omitted). Currently, a *Vaughn* index is understood to perform three important tasks:

> [I]t forces the government to analyze carefully any material withheld, it enables the trial court to fulfill its duty of ruling on the applicability of the exemption, and it enables the adversary system to operate by giving the requester as much information as possible, on the basis of which he can present his case to the trial court.

*Lykins v. Department of Justice*, 725 F.2d 1455, 1463 (D.C.Cir.1984).

There is no prescribed form for a Vaughn index; any form is acceptable as long as the affidavits provided by the government assist the court's efforts to decide the issues at hand. *See, e.g., Keys v. Department of Justice*, 830 F.2d 337, 349 (D.C.Cir.1987). Regardless of form, however, certain components are integral parts of any *Vaughn* index. Specifically, *Vaughn* indices usually communicate descriptions of each and every document contained in the file, including a general description of each document's contents and general facts about their creation (such as date, time, and place). For each document, the exemption claimed by the government is identified, and an explanation as to why the exemption applies to the document in question is provided.[6]

The government argues the district court lacks the authority to require a *Vaughn* index because such an index is not required when Exemption 7(A) is invoked. The Supreme Court has indicated that with respect to Exemption 7(A), the government need not point to a particularized harm to a particular enforcement proceeding; instead, the government may argue (and courts may hold) that certain general categories of documents will typically interfere with enforcement proceedings if the documents are disclosed. *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 223–24, 236, 98 S.Ct. 2311, 2317–18, 2324, 57 L.Ed.2d 159 (1978). In the wake of *Robbins*, many courts of appeal have altered their views on the need for a *Vaughn* index when Exemption 7(A) is involved. The rationale underlying these post-*Robbins* decisions has been that a *Vaughn* index is unnecessary because the government is permitted to demonstrate interference based on categories of documents and need not demonstrate interference with enforcement proceedings on a document-by-document basis. *E.g., Church of Scientology of Cal. v. IRS*, 792 F.2d 146, 152 (D.C.Cir. 1986) (Scalia, J.); *Barney v. IRS*, 618 F.2d 1268, 1273 (8th Cir.1980) (per curiam) ("Under exemption 7(A) the government is not

miss the appeal in case number 91–2164EM without deciding whether the collateral order doctrine applies to this case. We also point out that the analysis and outcome of this case would not differ if the collateral order doctrine were applied, so the government is not prejudiced by our decision to dismiss the appeal.

**6.** A sample index for a single document appears as an appendix to the Third Circuit's decision in *Conoco Inc. v. Department of Justice*, 687 F.2d 724, 730–32 (3d Cir.1982).

required to make a specific factual showing with respect to each withheld document that disclosure would actually interfere with a particular enforcement proceeding."). Moreover, in each of these cases, the appellate court was reviewing a district court's decision *not* to require a *Vaughn* index when the government had already provided adequate descriptions of the documents sought, as well as adequate explanations as to how the particular types of documents at issue could interfere with law enforcement proceedings. *E.g., Wright v. OSHA,* 822 F.2d 642, 647 (7th Cir.1987); *Lewis v. IRS,* 823 F.2d 375, 378 (9th Cir. 1987); *Curran v. Department of Justice,* 813 F.2d 473, 476 (1st Cir.1987).

At no time, however, has an appellate court suggested that *Robbins* alters the district court's statutory obligation to review the claimed exemption's applicability. *Robbins* does not allow for exemption merely because documents appear in a law enforcement agency's file. *E.g., Curran,* 813 F.2d at 475; *Crooker v. Bureau of Alcohol, Tobacco & Firearms,* 789 F.2d 64, 67 (D.C.Cir.1986). When an agency relies upon *Robbins* and offers categorical justifications for exemption under Exemption 7(A), the agency must still review each document individually. *Bevis v. Department of State,* 801 F.2d 1386, 1389 (D.C.Cir.1986). More specifically, the agency must perform the following tasks:

> First, it must define its categories functionally. Second, it must conduct a document-by-document review in order to assign documents to the proper category. Finally, it must explain to the court how the release of each category would interfere with enforcement proceedings.

*Id.* at 1389–90. The district court is well within its authority to verify that the agency has actually examined and properly categorized each document. It may accomplish this task by requiring an affidavit that describes, on a document-by-document basis, the documents in the file, the categories into which each document is placed, and a description of how disclosure of each category of documents might interfere with enforcement proceedings.[7] *Robbins* merely prevents a district court from ordering a document-by-document explanation as to how each document will interfere with enforcement proceedings. In other words, though the district court cannot require the government to justify its decision to deny disclosure on a document-by-document basis, it can require the government to justify its chosen categorization on a document-by-document basis. Furthermore, the district court has the authority to verify that the government has fullfilled its obligation to examine each document individually.[8]

The government argues that our decision in *Barney* prohibits the district court from entering the order at issue here. We disagree. In *Barney,* the district court granted summary judgement in favor of the government without requiring the government create a *Vaughn* index. We affirmed the grant of summary judgment despite the lack of a *Vaughn* index because both we and the district court were satisfied that the government's affidavits adequately described the documents, the categories to which they belonged, and the possible harms of disclosure. *Id.* at 1272–73. If the district court is not provided with these materials, or if it finds the materials provided by the government to be insufficient, the district court must be permitted to require further information from the government.

In the case at bar, the record clearly indicates that the district court was not satisfied with the affidavits supplied by the

---

7. We do not suggest any particular degree of specificity that may be required, preferring to leave such decisions to the district courts' discretion to be exercised on a case-by-case basis.

8. The district court does have the authority to conduct an *in camera* review, 5 U.S.C. § 552(a)(4)(B). Although it may be argued that *in camera* review might have settled this entire matter, we have indicated that such a procedure should rarely be used because it disrupts the traditional adversarial process and because it represents an enormous drain on limited judicial resources. *E.g., Cox v. United States Department of Justice,* 576 F.2d 1302, 1311–12 (8th Cir.1978). In light of *Cox,* and in light of the sheer size of this file, we cannot fault the district court for refusing to accept the government's offer to permit an *in camera* review.

government. The district court's dissatisfaction is understandable given the government's blanket assertion that all 13,800 documents, accumulated over a 15–year span, fit neatly into nine categories described over the course of five pages. Furthermore, Crancer raised arguments that, in the district court's belief, raised serious questions about the validity of the government's search and categorization. The district court has the discretion to require further categorization as well as assurances that all the documents actually belong in the categories. Moreover, the court may believe it needs information about each document, not only to verify that the government has fulfilled its obligation to examine each document, but also to enable it to understand or challenge the categories created by the government.[9] If the district court is unable to verify that the government has examined and correctly categorized each document, Exemption 7(A) will once again become a *de facto* blanket exemption of all documents in law enforcement files. *See Bevis*, 801 F.2d at 1389 ("Absent such individual scrutiny, the categories would be no more than smaller versions of the 'blanket exemptions' disapproved by Congress in its 1974 amendment of FOIA.").

These concerns cannot be alleviated by simply requiring the government to provide "more specific, distinct categories" as suggested by the dissent, *post* at 537. Further categorization is an appropriate remedy when the district court finds the categories inadequate, confusing, or otherwise unhelpful. The case at bar does not present such a situation; instead, the concern at issue is whether all the documents in the file are described by the government's categories. This issue cannot be resolved by requiring further categorization. Similarly, we do not agree with the dissent's view that "[t]he threat of disclosure ... motivates the government to make a proper showing that the exemption applies." *Post* at 537.

In a situation similar to this one, where the district court finds itself presented with an insufficient record upon which to make a ruling, the district court is unlikely to simply order disclosure. Even if the court were to order disclosure, it is quite likely that this court would remand the case for further development of the record, thereby saddling the district court with an inadequate record and no mechanism to insure the government's categories accurately reflect the true contents of the file. Without an index to perform this vital function, the district court will be forced to accept the government's contentions with little to no scrutiny. Consequently, we believe the effect of the dissenting opinion would be to return "blanket status" to Exemption 7(A) and deny meaningful disclosure whenever the exemption is invoked, despite Congress' intent to the contrary.

The government also argues that the same court that decided *Vaughn v. Rosen* has said that *Vaughn* indices are inappropriate when Exemption 7(A) is invoked. A careful reading of these cases, however, indicates that the D.C. Circuit only disapproves the use of *Vaughn* indices insofar as they would be used to demonstrate how each document would actually interfere with enforcement proceedings. *See, e.g., Church of Scientology*, 792 F.2d at 152 ("A *Vaughn* index would have served no purpose since ... Exemption 7(A) ... did not require a showing that each individual document would produce such interference...."); *Crooker*, 789 F.2d at 67 ("Because generic determinations [of interference] are permitted, the government need not justify its withholdings document-by-document...."). No case from the D.C. Circuit (or from any other circuit) has prohibited a district court from requiring descriptions of a file's contents on a document-by-document basis. In fact, the D.C. Circuit has confirmed the government's obligations to review all the documents in a requested file and explain how each document fits into the categories cho-

---

**9.** For instance, the court may believe that 15–year old witness statements do not belong in the same category as 6–month old witness statements. However, the court would be unable to differentiate between the two unless it had information about each witness statement in the file.

sen by the government. *See Bevis,* 801 F.2d at 1389–90. Given this obligation, and given the district court's duty to conduct a *de novo* review of the government's decision to not disclose documents, district courts must be able to ask for this type of document-by-document information. Otherwise, district courts will be nothing more than rubber stamps for the government's decision to deny disclosure. The FOIA does not permit such a limited role for the district courts.

Having concluded that it is within the district court's power and discretion to order a document-by-document index, we cannot grant the government's application for a writ of mandamus. *Central Micofilm,* 688 F.2d at 1212. ("[A]rguable error within the scope of trial court discretion is not a proper basis for mandamus.").

### III. CONCLUSION

Although we agree that invocation of Exemption 7(A) may alter the form of the *Vaughn* index, Exemption 7(A) does not eliminate the need for some mechanism to perform the functions historically associated with an index. Consistent with this opinion, it lies within the district court's power to order the government to produce a *Vaughn* index when Exemption 7(A) is invoked. Furthermore, the district court did not abuse its discretion in doing so in this case. Consequently, we deny the application for writ of mandamus and dismiss the interlocutory appeal.

WOLLMAN, Circuit Judge, dissenting.

The majority has decided that it is within the district court's authority to order the government to produce a *Vaughn* index when exemption 7(A) is invoked. I respectfully dissent.

The majority agrees that *NLRB v. Robbins Tire & Rubber Co.,* 437 U.S. 214, 98 S.Ct. 2311, 57 L.Ed.2d 159 (1978), and its progeny prohibit a district court from requiring the government to justify its decision to deny disclosure on a document-by-document basis. The majority attempts to avoid this prohibition, however, by holding that although a district court may not re-

quire a specific factual showing and explanation describing why each document is exempt, it may require a specific factual showing as to why each document belongs in a category, along with an explanation describing why the category itself is exempt. How the government can make the latter showing without being required to make the prohibited showing, the majority does not tell us.

I see no practical difference between an explanation why each document is exempt and an explanation why each category of similar documents is exempt. In both cases, the government must first provide specific factual information concerning each document, "including a general description of each document's contents and general facts about their creation (such as date, time, and place)." Majority op. at 533. Instead of an individual explanation for non-disclosure of each document, however, the majority would require a categorical explanation for nondisclosure. Because each document must fit into a distinct category of the same or similar documents, *id.* at 534, the categorical explanation for nondisclosure must necessarily be the same or similar as the individual explanations that *Robbins Tire* prohibits.

In addition, the majority reads our decision in *Barney v. IRS,* 618 F.2d 1268 (8th Cir.1980), too narrowly. The majority interprets *Barney* to mean that specific factual information may be required if the district court is unsatisfied with the government's showing that exemption 7(A) applies. Majority op. at 534. *Barney,* however, holds that "[u]nder exemption 7(A) the government is *not required to make a specific factual showing with respect to each withheld document* that disclosure would actually interfere with a particular enforcement proceeding." *Id.* at 1273 (emphasis added) (citing *Robbins Tire,* 437 U.S. at 234–35, 98 S.Ct. at 2323). Other circuits have said the same. *See, e.g., Lewis v. IRS,* 823 F.2d 375, 378 (9th Cir. 1987); *Curran v. Department of Justice,* 813 F.2d 473, 475 (1st Cir.1987); *Church of Scientology of California v. I.R.S.,* 792 F.2d 146, 152 (D.C.Cir.1986); *Campbell v.*

*Department of Health and Human Services*, 682 F.2d 256, 265 (D.C.Cir.1982).

Under FOIA, the government is required to release requested information unless a limited exemption applies. *See Curran*, 813 F.2d at 473. The government has the burden of demonstrating that the withheld documents are exempt from disclosure, 5 U.S.C. § 552(a)(4)(B), and the district court must make a de novo determination as to whether an exemption applies. *Id.* To meet its burden, however, the government need not provide specific factual information document-by-document, as *Barney* clearly holds. The majority decision severely undermines, if not completely overrules, *Barney*.

In *Robbins Tire*, the Supreme Court pointed out that the very language of exemption 7(A) contemplates that generic determinations be made and that exemption 7(A) is to be treated differently from other exemptions. 437 U.S. at 223–24, 98 S.Ct. at 2317–18. The District of Columbia Circuit has reasoned that

> [w]hen ... a claimed FOIA exemption consists of a generic exclusion, dependent upon the category of records rather than the subject matter which each individual record contains, resort to a *Vaughn* index is futile. Thus, in *NLRB v. Robbins Tire & Rubber Co.*, [citation omitted] the Supreme Court upheld, without any provision of a *Vaughn* index, the Labor Board's refusal to provide under FOIA witness statements obtained in the investigation of pending unfair labor practice proceedings. A *Vaughn* index would have served no purpose since ... Exemption 7(A) did not require a showing that each individual document would produce such interference, but could rather be applied generically, to classes of records such as witness statements.

*Church of Scientology*, 792 F.2d at 152 (Scalia, J.). Moreover, under exemption 7(A), " 'the inherent nature of the requested documents is irrelevant to the question of exemption' " *Curran*, 813 F.2d at 474 (quoting *Irons v. FBI*, 811 F.2d 681, 685 (1st Cir.1987)). Thus, by holding that the government may be required to provide specific factual information on a document-by-document basis under this generic exclusion, the majority opinion nullifies the exemption that 7(A) was intended to provide.

The majority contends that its holding is necessary in order to insure that exemption 7(A) does not again become a blanket exemption, arguing that a *Vaughn* index helps to avoid this result by allowing the district court to "verify that the government has examined and correctly categorized each document." Majority op. at 535. This concern is misplaced. First, we have stated that " '[t]he federal courts and federal judges are ill-suited to assume the role of super-administrator in FOIA cases.' " *Cleary v. FBI*, 811 F.2d 421, 423 (8th Cir. 1987) (citation omitted). Second, if the government cannot meet its burden of demonstrating that the information is exempt, then the district court remains free to simply deny the exemption. The threat of disclosure, therefore, motivates the government to make a proper showing that the exemption applies.

If the generic index submitted by the government is not sufficient to sustain the 7(A) exemption, then the district court may request more specific, distinct categories so that the court can determine how each category might interfere with the investigation. Indeed, this is exactly what the District of Columbia Circuit ordered in *Bevis v. Department of State*, 801 F.2d 1386, 1390 (D.C.Cir.1986), a case upon which the majority relies for the proposition that the agency must individually review each document. While the agency must review each document to determine its proper categorical placement, *id.* at 1389, the agency is not required to provide specific factual information about each document. *See Campbell*, 682 F.2d at 265.

If the categories remain too general, the court may also examine the disputed documents *in camera* to make a first hand determination. 5 U.S.C. § 552(a)(4)(B); *Lewis*, 823 F.2d at 379; *Cleary*, 811 F.2d at 423 (citation omitted) (the court should utilize "an *in camera* examination of the [material] itself as an aid in determining whether the Government's affidavits are

accurate and made in good faith"); *Bevis,* 801 F.2d at 1390. The remedy is not, however, resort to a *Vaughn* index.[10]

Congress enacted exemption 7(A) to prohibit interference in an ongoing criminal investigation. The Supreme Court's decision in *Robbins* to allow generic category-by-category indices in exemption 7(A) cases, rather than requiring detailed factual information on a document-by-document basis, serves an important interest: when government confidentiality is at stake during an investigation, "provision of the detail which a satisfactory *Vaughn* index entails would itself probably breach the dike." *Curran,* 813 F.2d at 475. In short, the requirement of a *Vaughn* index in these cases will cause the cure, exemption 7(A), "to become the carrier of the disease." *Id.*

I would reverse the district court's order.

### Order

### February 12, 1992

The suggestion for rehearing en banc is granted. The judgment and opinion previously filed by the panel are vacated.

This case is set for argument before the Court en banc on Monday, May 11, 1992, in St. Paul, Minnesota. The parties are allowed, but not required, to file supplemental briefs not to exceed 15 pages in length. The briefs are to be filed simultaneously with the Clerk of this Court on or before February 26, 1992.

---

10. In *Dickerson v. Department of Justice,* No. 90–CV–060045 (E.D.Mich. July 31, 1991), the plaintiff sought the release of information from the Hoffa FBI file and requested a *Vaughn* index. The court accepted the government's categorical index, examined certain documents *in camera,* and granted summary judgment to the government on the basis of exemption 7(A). The court stated that it is "satisfied beyond any doubt that the investigation into Hoffa's disappearance is active and continuing, with the clear direction of future criminal proceedings being instituted." Moreover the court held that *"in camera* inspection mandates that the FBI files not be disclosed." In the instant case, the district court refused the opportunity to view documents *in camera.*