### In re DEPARTMENT OF JUSTICE, Petitioner.

### Barbara Ann CRANCER, Appellee,

v.

### UNITED STATES DEPARTMENT OF JUSTICE, Appellant.

#### Nos. 91–2080, 91–2164.

United States Court of Appeals, Eighth Circuit.

Submitted May 11, 1992.

Decided Aug. 5, 1993.

briefing is denied as moot.

Scott R. McIntosh, Washington, DC, argued (Stuart M. Gerson, Stephen B. Higgins, Leonard Schaitman and Scott R. McIntosh, on the petition for rehearing), for appellant.

Richard E. Greenberg, Clayton, MO, argued, for appellee.

Before RICHARD S. ARNOLD, Chief Judge, McMILLIAN, JOHN R. GIBSON, FAGG, BOWMAN, WOLLMAN, MAGILL, BEAM, LOKEN, and HANSEN, Circuit Judges, En Banc.

WOLLMAN, Circuit Judge.

In *In re Department of Justice*, 950 F.2d 530 (8th Cir.1991) (*Crancer I* ), a panel of this court upheld the district court's order requiring the government to provide a *Vaughn*[1] index after the government had invoked Exemption 7(A) of the Freedom of Information Act, 5 U.S.C. § 552(b)(7)(A) (1988). We granted the government's suggestion for rehearing *en banc* and vacated the panel's decision. We now issue a writ of mandamus, vacate the challenged order, and remand the case to the district court for further proceedings.

## I.

In 1987, Barbara Ann Crancer filed a Freedom of Information Act (FOIA) request with the Department of Justice. Crancer sought the release of certain information uncovered during the investigation conducted by the Federal Bureau of Investigation into the disappearance of her father, Jimmy Hoffa, the former president of the International Brotherhood of Teamsters. The FBI's investigation has resulted in the accumulation of more than 13,800 pages of records relating to Hoffa's disappearance.

The Department denied Crancer's request on the basis of Exemption 7(A), contending that the Hoffa FBI file contains "records or information compiled for law enforcement purposes," the release of which "could rea-

sonably be expected to interfere with enforcement proceedings." 5 U.S.C. § 552(b)(7)(A).

After exhausting her administrative remedies, Crancer brought suit to compel the Department to provide her with the documents she had requested. During the pendency of her suit, Crancer filed a second, broader request seeking any and all materials relating to the FBI's investigation into Hoffa's disappearance. After this request was administratively denied by the Department, also on the basis of Exemption 7(A), Crancer amended her complaint to include her second request.

The Department moved for summary judgment on the basis of the claimed exemption. The district court ordered the Department to provide Crancer with a *Vaughn* index so that she could effectively oppose the government's pending motion. The court's order required the Department to produce an "itemized, indexed inventory of every agency record or portion thereof responsive to plaintiff's FOIA request," together with a "detailed justification statement covering each refusal to release [an] agency record[ ] or portions thereof." D.Ct. Order of July 27, 1990, at 1. The Department asked the court to reconsider its order directing the production of the *Vaughn* index. This request was denied. The Department then requested that the district court modify its earlier order and allow the Department to provide a categorical description of the documents contained in the Hoffa FBI file. The Department submitted a list of nine categories of documents and an affidavit describing the potential interference with enforcement proceedings that would result if it were required to compile a *Vaughn* index. The district court denied this request and ordered the Department to submit the *Vaughn* index to a magistrate judge for *in camera* review.

In lieu of submitting a *Vaughn* index, the Department asked the magistrate judge to review the actual documents *in camera.* The magistrate judge denied this request, but extended the time period in which the *Vaughn* index was to be submitted. The Department then asked the district court to

---

1. *See Vaughn v. Rosen,* 484 F.2d 820, 826–28 (D.C.Cir.1973), *cert. denied,* 415 U.S. 977, 94 S.Ct. 1564, 39 L.Ed.2d 873 (1974).

reconsider the magistrate judge's order or, in the alternative, to certify the matter for interlocutory appeal. These requests were also denied.

The Department then sought relief from this court, asserting jurisdiction under the collateral order doctrine, *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949), or the All Writs Act, 28 U.S.C. § 1651(b).

In *Crancer I*, the panel asserted jurisdiction under the All Writs Act and upheld the district court's order requiring the preparation of a *Vaughn* index. The panel first determined that the Department could not be required to provide a specific factual showing and explanation describing why each document is exempt. It went on to hold, however, that the Department could be required to make a specific factual showing to demonstrate why each document belongs in a certain category, along with an explanation describing why the category itself is exempt from disclosure.

## II.

■ We first examine whether, and the basis upon which, we have jurisdiction to hear this case.

We possess discretionary writ-issuing authority under the All Writs Act, 28 U.S.C. § 1651(b). As noted by the panel in *Crancer I*, mandamus is "available only in those exceptional circumstances amounting to a judicial usurpation of power." *In re Ford Motor Co.*, 751 F.2d 274, 275 (8th Cir.1984). The panel determined that:

[The Department's] argument is a novel one and has not been directly addressed by any court. If [the Department] is correct in its contention that the district court lacked authority to order a *Vaughn* index, then a writ would be the proper remedy. Because the issue of whether the writ is available is intertwined with the merits of this interlocutory matter, we must decide whether the district court had authority to require a *Vaughn*-type index in these circumstances.

*Crancer I*, 950 F.2d at 532 (citation omitted). We agree with the panel's analysis and believe that this case presents a unique situation. Thus, we conclude that we have jurisdiction to decide the question whether the district court's order directing the Department to produce a *Vaughn* index in the face of the Department's invocation of Exemption 7(A) constituted a judicial usurpation of power.

## III.

■ "The basic purpose of FOIA is to ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed." *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242, 98 S.Ct. 2311, 2327, 57 L.Ed.2d 159 (1978). Consistent with this policy of broad disclosure, the government is required to release all requested information upon the demand of any member of the public. *Id.* at 221, 98 S.Ct. at 2316; *see also Curran v. Department of Justice*, 813 F.2d 473 (1st Cir.1987); *Irons v. FBI*, 811 F.2d 681, 685 (1st Cir.1987). Congress fashioned certain explicit exemptions from disclosure, however, in order to preserve vital government policies and, in some cases, to protect individuals. *See* 5 U.S.C. § 552(b)(1)–)9; *see also Robbins Tire*, 437 U.S. at 220–21, 98 S.Ct. at 2316 ("Congress carefully structured nine exemptions from the otherwise mandatory disclosure requirements in order to protect specified confidentiality and privacy interests.").

■ Once information is requested under FOIA, therefore, the government must provide the information unless it determines that a specific exemption applies. Likewise, the government bears the burden of demonstrating that the claimed exemption applies. 5 U.S.C. § 552(a)(4)(B). The district court must determine *de novo* whether the government has satisfied its burden. *Id.*

In the face of a claimed statutory exemption, district courts have sometimes required the government to provide a *Vaughn* index. "This indexing procedure is perceived as necessary to permit the district court and the requesting party to evaluate the [government's] decision to withhold records and to ensure its compliance with the mandates of the FOIA." *Barney v. IRS*, 618 F.2d 1268, 1272 (8th Cir.1980) (per curiam).

A *Vaughn* index provides a specific factual description of each document sought by the FOIA requester. Specifically, such an index includes a general description of each document's contents, including information about the document's creation, such as date, time, and place. *Crancer I*, 950 F.2d at 533. "For each document, the exemption claimed by the government is identified, and an explanation as to why the exemption applies to the document in question is provided." *Id.;* see also *Barney*, 618 F.2d at 1272.

■ Exemption 7(A) of FOIA provides that the act "does not apply to matters that are—* * * (7) records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information (A) could reasonably be expected to interfere with enforcement proceedings[.]" 5 U.S.C. § 552(b)(7)(A). The government contends that the courts have interpreted this exemption differently from other FOIA exemptions, with the result that a district court may not order the production of a *Vaughn* index when Exemption 7(A) is invoked.

In *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 98 S.Ct. 2311, 57 L.Ed.2d 159 (1978), the Supreme Court addressed the burden that the government must bear when asserting Exemption 7(A). In that case, the FOIA requester, an employer, sought from the National Labor Relations Board all statements made by potential witnesses prior to a Board hearing on the employer's unfair labor practices. *Id.* at 216, 98 S.Ct. at 2314. On appeal, the employer argued that the district court had erred by not requiring the government to make an individualized showing that each withheld document fit within the limits of Exemption 7(A). The Supreme Court rejected this argument, interpreting Exemption 7(A) of FOIA to require the government to prove that "with respect to particular kinds of enforcement proceedings, disclosure of particular kinds of investigatory records while a case is pending would generally 'interfere with enforcement proceedings.'" *Id.* at 236, 98 S.Ct. at 2324.

In support of its ruling, the Supreme Court noted that:

[t]here is a readily apparent difference between [Exemption 7(A)] and [Exemptions 7(B)–(D)]. The latter [exemptions] refer to particular cases ... and thus seem to require a showing that the factors made relevant by the statute are present in each distinct situation. By contrast, since [Exemption 7(A)] speaks in the plural voice about "enforcement proceedings," it appears to contemplate that certain generic determinations might be made.

437 U.S. at 223–24, 98 S.Ct. at 2318. The Court then examined Exemption 7's legislative history, which appeared to confirm the Court's observation regarding the distinguishing characteristic of Exemption 7(A). *Id.* at 224–34, 98 S.Ct. at 2318. The Court further noted that had Congress intended that "the Government in each case show a particularized risk to its individual 'enforcement proceedin[g],'" it could have done so. *Id.* at 234, 98 S.Ct. at 2323.

The Court also addressed Congress's 1974 amendment of Exemption 7(A). This amendment was designed "to eliminate 'blanket exemptions' for Government records simply because they were found in investigatory files compiled for law enforcement purposes." *Id.* at 236, 98 S.Ct. at 2324. The Court's discussion of President Ford's veto of the 1974 amendment and the subsequent congressional override is instructive for our present analysis. The President was concerned that the 1974 amendment to Exemption 7(A) "would require the Government to 'prove ...—separately for each paragraph of each document—that disclosure "would" cause' a specific harm" to enforcement proceedings. *Id.* at 235, 98 S.Ct. at 2323 (citation omitted). Congressional supporters of the amendment termed the President's interpretation of the amendment "'ludicrous,'" stating that the "'burden is substantially less than we would be led to believe by the President's message.'" *Id.* (citation omitted).[2]

The Court concluded that although the 1974 amendment to Exemption 7(A) was de-

---

**2.** For further discussion of the legislative history of the 1974 amendment to Exemption 7(A), *see Federal Bureau of Investigation v. Abramson*, 456 U.S. 615, 626, 102 S.Ct. 2054, 2061, 72 L.Ed.2d 376 (1982); *Campbell v. Department of Health and Human Serv.*, 682 F.2d 256, 261–63 (D.C.Cir. 1982).

signed to eliminate blanket exemptions for records found in investigatory files, Congress did not intend that generic determinations of those materials entitled to Exemption 7(A) protection could never be made. Rather, the government must demonstrate, and courts must determine, whether "disclosure of particular kinds of investigatory records ... would generally 'interfere with enforcement proceedings.'" *Id.* at 236, 98 S.Ct. at 2324. In other words, Congress intended that certain types or categories of investigatory records be withheld under Exemption 7(A) because disclosure of documents within those categories generally would interfere with enforcement proceedings.

With this understanding, post-*Robbins Tire* courts have made these determinations generically, category-of-document by category-of-document. In *Barney v. IRS*, for example, we were confronted with the question whether, in the wake of *Robbins Tire*, the government was required to provide a *Vaughn* index after the government invoked Exemption 7(A). 618 F.2d 1268 (8th Cir. 1980) (per curiam). We held that "[t]o sustain its burden of showing documents were properly withheld under exemption 7(A) the government had to establish only that they were investigatory records compiled for law enforcement purposes and that production would interfere with pending enforcement proceedings." *Id.* at 1272–73. The *Barney* court bolstered its conclusion by emphasizing that "[u]nder exemption 7(A) the government is not required to make a specific factual showing with respect to each withheld document that disclosure would actually interfere with a particular enforcement proceeding." *Id.* at 1273 (citing *Robbins Tire*, 437 U.S. at 234–35, 98 S.Ct. at 2323).

Congress amended Exemption 7 in 1986 to lessen the burden on the government in establishing the application of Exemption 7(A). Freedom of Information Reform Act of 1986 (FIRA), Pub.L. No. 99–570, § 1802, 100 Stat. 3207, 3207–48 (1986). Whereas under the 1974 version of Exemption 7(A), the government bore the burden of showing that the production of the requested law enforcement records "would interfere with enforcement proceedings," under the 1986 version the government need only show that the production of law enforcement records or informa-

tion "could reasonably be expected to interfere with law enforcement proceedings."

In 1989, the Supreme Court revisited the government's burden under Exemption 7, this time focusing on the use of categorical determinations under Exemption 7(C), which covers documents whose production "could reasonably be expected to constitute an unwarranted invasion of personal privacy." *United States Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 109 S.Ct. 1468, 103 L.Ed.2d 774 (1989) (*"Reporters Committee"*). In *Reporters Committee*, a group of journalists requested that the FBI disclose an individual's computerized criminal history file, known colloquially as the person's "rap sheet." The Supreme Court held that the production of rap sheets "as a categorical matter" could reasonably be expected to constitute an unwarranted invasion of a citizen's privacy. *Id.* at 780, 109 S.Ct. at 1485.

The Court discussed its earlier approval of a categorical approach to Exemption 7(A) in *Robbins Tire*. The Court noted that it had based its ruling in *Robbins Tire* on the perception that Exemption 7(A)'s reference to the plural "enforcement proceedings" supported a categorical approach when 7(A) was invoked, in contrast to the singular references in the other subsections of Exemption 7, which seemed to suggest a case-by-case balancing. Finding that "[j]ust as one can ask whether a particular rap sheet is a 'law enforcement record' that meets the requirements of [Exemption 7(C)], so too can one ask whether rap sheets in general ... are 'law enforcement records' that meet the stated criteria," the Court concluded that its approval of a categorical approach for Exemption 7(A) applied with equal force to the other subsections in Exemption 7. *Id.* at 779, 109 S.Ct. at 1485. Because the Court found that the disclosure of computerized compilations of an individual's criminal history could always be expected to constitute an invasion of an individual's privacy, it held that rap sheets as a category are exempted from disclosure under FOIA. *Id.* at 780, 109 S.Ct. at 1485.

The Court also supported its holding that a categorical approach was appropriate for Exemption 7(C) as well as 7(A) by pointing to

the 1986 amendment. The Court stated that the amended 7(C), which like 7(A) had changed from the more stringent "would" to the more flexible "could reasonably be expected to," was enacted "to give the Government greater flexibility in responding to FOIA requests for law enforcement records or information." *Id.* at 777 n. 22, 109 S.Ct. at 1484 n. 22. The Court further noted that the amendment was designed to "replace a focus on the effect of a particular disclosure 'with a standard of reasonableness ... based on an objective test.'" *Id.* This reasonableness standard, the Court concluded, "amply supports a categorical approach to the balance of private and public interests in Exemption 7(C)." *Id.* The Court's conclusion concerning the effect of the amendment applies with equal force to Exemption 7(A), given the Court's conclusion that all of the Exemption 7 subsections should be interpreted similarly with respect to the use of categorical justifications.

Recently, the Court further explained its categorical approach in *United States Dep't of Justice v. Landano,* — U.S. —, 113 S.Ct. 2014, 124 L.Ed.2d 84 (1993). Seeking to support a claim that the government had failed to disclose exculpatory evidence in his earlier criminal case, Landano sought all of the FBI files connected with the police officer's murder for which Landano had been convicted. After releasing a portion of its files, the FBI withheld certain documents on the grounds that they were exempt under Exemption 7(D), which applies to law enforcement records or information whose production "could reasonably be expected to disclose the identity of a confidential source." The district court largely rejected the government's categorical explanations and held that the FBI had to articulate "case-specific reasons for non-disclosure" of all information other than records pertaining to regular FBI informants. *Id.,* — U.S. at —, 113 S.Ct. at 2018. The Court of Appeals for the Third Circuit affirmed, holding that the government had to provide detailed explanations relating to each alleged confidential source in order to justify nondisclosure under Exemption 7(D). *Id.,* — U.S. at —, 113 S.Ct. at 2019.

The Supreme Court reversed and remanded. The Court first rejected the government's argument that it is entitled to a presumption under FOIA that all FBI sources are confidential and that any records relating to FBI sources should be presumptively exempt from disclosure. The Court noted that the government's proposed presumption was not rebuttable, as argued by the government, but amounted to an irrebuttable presumption or blanket exemption that found no support in the language or legislative history of Exemption 7(D). *Id.,* — U.S. at —, 113 S.Ct. at 2023.

The Court, however, did not agree with the Third Circuit's requirement that the government must provide a detailed justification relating to each alleged confidential source. To the contrary, the Court stated that the government could point to categories of documents, the circumstances surrounding which would support the inference that the sources to whom they pertained were confidential. *Id.,* — U.S. at —, 113 S.Ct. at 2023. For example, the Court suggested that "paid informants normally expect their cooperation with the FBI to be kept confidential," implying that the government need only present a category of documents relating to paid informants, whose production could reasonably be expected to disclose the informant's identity, in order to justify nondisclosure under Exemption 7(D). *Id.* As a second example, the Court opined that eyewitnesses to a gang-related murder could also probably be presumed to be confidential. *Id.* The Court concluded that such a generic, categorical approach best articulated Congress's intent "to provide '"'workable' rules"' of FOIA disclosure." *Id.* (citing *Reporters Committee,* 489 U.S. at 779, 109 S.Ct. at 1485).

Thus, we conclude that the Supreme Court has consistently interpreted Exemption 7 of FOIA (specifically so far subsections 7(A), 7(C), and 7(D)) to permit the government to proceed on a categorical basis in order to justify nondisclosure under one of Exemption 7's subsections. *See Landano,* — U.S. at — – —, 113 S.Ct. at 2023–24; *Reporters Committee,* 489 U.S. at 779–80, 109 S.Ct. at 1485; *Robbins Tire,* 437 U.S. at 241–43, 98 S.Ct. at 2326–27. The Court's interpretation

of Exemption 7 and Congress's intent in enacting it has been strengthened by the 1986 amendment, which provided for greater flexibility and lessened the government's burden. *See Reporters Committee,* 489 U.S. at 777 n. 22, 109 S.Ct. at 1484 n. 22.

Our interpretation of Exemption 7(A) in *Barney* mirrors the Supreme Court's interpretation. Moreover, consistent with the teachings of *Robbins Tire,* our analysis in *Barney* is in accord with the principle that " 'the inherent nature of the requested documents is irrelevant to the question of exemption.' " *Curran,* 813 F.2d at 474 (quoting *Irons v. FBI,* 811 F.2d 681, 685 (1st Cir. 1987)). This interpretation is consistent with decisions from other circuits. *See, e.g., Lewis v. IRS,* 823 F.2d 375, 378 (9th Cir.1987); *Curran,* 813 F.2d at 475; *Church of Scientology of Calif. v. IRS,* 792 F.2d 146, 152 (D.C.Cir.1986); *Campbell,* 682 F.2d at 265.[3]

The District of Columbia Circuit, which originally developed the *Vaughn* index, has succinctly explained the relationship between Exemption 7(A), as interpreted by *Robbins Tire,* and the use of *Vaughn* indices:

> [w]hen ... a claimed FOIA exemption consists of a generic exclusion [such as Exemption 7(A)], dependent upon the category of records rather than the subject matter which each individual record contains, resort to a *Vaughn* index is futile. Thus, in *NLRB v. Robbins Tire & Rubber Co.,* [citation omitted], the Supreme Court upheld, without any provision of a *Vaughn* index, the Labor Board's refusal to provide under FOIA witness statements obtained in the investigation of pending unfair labor practice proceedings. A *Vaughn* index would have served no purpose since ... [Exemption 7(A)] did not require a showing that each individual document would produce such interference, but could rather be applied generically, to classes of records such as witness statements.

*Church of Scientology,* 792 F.2d at 152 (Scalia, J.).

In light of the above discussion, the district court's order for a *Vaughn* index in the present case appends an additional requirement to Exemption 7(A) that exceeds the bounds of the statute as interpreted by the Supreme Court and this court. The district court's order required the government, after identifying each document, to provide a "detailed justification statement covering each refusal to release said agency records or portions thereof." D.Ct. Order of July 27, 1990, at 1. This goes beyond the categorical explanations that the Supreme Court in *Robbins Tire* held to be sufficient to justify nondisclosure under Exemption 7(A).

■ In sum, the government bears the burden of establishing that Exemption 7(A) applies. And under *Robbins Tire,* Exemption 7(A) does not require that the government produce a fact-specific, document-specific, *Vaughn* index in order to satisfy that burden. The contents of the requested documents are irrelevant. It is the particular categories of documents, and the likelihood that the release of documents within those categories could reasonably be expected to threaten enforcement proceedings, on which the court must focus. The district court, therefore, acted beyond the scope of its authority when it ordered the Department to produce a *Vaughn* index.

## IV.

■ "Although generic determinations are permitted, and the government need not justify its 7(A) refusal on a document-by-document basis, there must nevertheless be some minimally sufficient showing." *Curran,* 813 F.2d at 475. To satisfy its burden with regard to Exemption 7(A), the government must define functional categories of docu-

**3.** The panel attempted to distinguish these cases on the ground that the appellate courts were reviewing district court decisions that had found *Vaughn* indices not to be required. *Crancer I,* 950 F.2d at 534. We find this reasoning unpersuasive. Whatever the procedural posture, the Supreme Court has made clear that the government does not have to provide fact-specific information with respect to each document to justify its claim that Exemption 7(A) applies. As demonstrated, the actual contents of the documents are not relevant when the propriety of Exemption 7(A) is in dispute. *See Robbins Tire,* 437 U.S. at 236, 98 S.Ct. at 2323. Rather, the government may meet its burden by showing how disclosure of each category of documents would likely interfere with the investigation. *Id.*

ments; it must conduct a document-by-document review to assign documents to proper categories; and it must explain to the court how the release of each category would interfere with enforcement proceedings.[4] *See Bevis v. Department of State*, 801 F.2d 1386, 1389 (D.C.Cir.1986).

■ If the generic index submitted by the government is not sufficient to sustain the 7(A) exemption, then the district court may request more specific, distinct categories so that it may more easily determine how each category might interfere with enforcement proceedings. *See Campbell*, 682 F.2d at 265. Indeed, this is what the court ordered in *Bevis*, 801 F.2d at 1390. "The chief characteristic of an acceptable taxonomy should be functionality—that is, the classification should be clear enough to permit a court to ascertain 'how each .. category of documents, if disclosed, would interfere with the investigation.'" *Curran*, 813 F.2d at 475 (citing *Campbell*, 682 F.2d at 265).

■ If the categories remain too general, the district court may also examine the disputed documents *in camera* to make a first hand determination. 5 U.S.C. § 552(a)(4)(B); *Lewis*, 823 F.2d at 378; *see also Cleary v. FBI*, 811 F.2d 421, 423 (8th Cir.1987) (*in camera* examination in 7(C) and (D) exemption case); *Parton v. United States Dep't of Justice*, 727 F.2d 774 (8th Cir.1984); *Cox v. United States Dep't of Justice*, 576 F.2d 1302 (8th Cir.1978).

In *Dickerson v. Department of Justice*, 992 F.2d 1426 (6th Cir.1993), the plaintiff sought the release of information from the Hoffa FBI file and requested a *Vaughn* index. The district court accepted the government's categorical index, examined certain documents *in camera*, and granted summary judgment to the government on the basis of Exemption 7(A). The court stated that it was "satisfied beyond any doubt that the investigation into Hoffa's disappearance is active and continuing, with the clear direction of future crimi-

nal proceedings being instituted." *Dickerson v. Department of Justice*, No. 90–CV–60045–AA, 1991 WL 337422 (E.D.Mich. July 31, 1991).

On appeal, the Court of Appeals for the Sixth Circuit reviewed the file that had been submitted to the district court and concluded that the district court had not abused its discretion in ruling that there was no need to go beyond the documents that the FBI had submitted. *Dickerson*, 992 F.2d at 1431–32. The court of appeals also held that the district court was correct in finding that the FBI's investigation remains active and that it was directed toward the institution of criminal proceedings. *Id.* at 1432. Further, the Sixth Circuit held that the district court was correct "in its finding that production of the records sought by plaintiff Dickerson could reasonably be expected to interfere with a future prosecution." *Id.* at 1433.

■ In the present case, the district court was apparently of the belief that the Department was not asserting Exemption 7(A) in good faith or that it had not individually reviewed the requested documents to place them in their functional categories. While the district court may not order a *Vaughn* index as an aid to its review, it still must satisfy itself that the requested documents have been properly withheld. The Department's failure to demonstrate that the sought-after documents relate to an ongoing investigation or could reasonably be expected to interfere with future law enforcement proceedings will carry with it the loss of the 7(A) exemption. In that regard, we note that although the Sixth Circuit's affirmative holding on that issue in *Dickerson* will not be binding on the district court on remand, that holding does give credence to the Department's assertion of the 7(A) exemption in the present case.

In summary, Congress enacted Exemption 7(A) to prohibit interference in an ongoing criminal investigation. The Supreme Court's decision in *Robbins Tire* to allow generic category-by-category classifications in Exemption 7(A) cases, rather than detailed fact-

---

4. We express no opinion as to whether the categorical index submitted by the Department in this case satisfies the *Bevis* paradigm. The proceeding below was, for all intents and purposes, focused only on whether the district court could order a *Vaughn* index. On remand, the Department should submit its categorical index and affidavits in accordance with the principles set forth in this opinion.

specific explanations on a document-by-document basis, serves an important interest: "[p]rovision of the detail which a satisfactory *Vaughn* Index entails would itself probably breach the dike." *Curran,* 813 F.2d at 475. "Withal, a tightrope must be walked [in Exemption 7(A) cases]: categories must be distinct enough to allow meaningful judicial review, yet not so distinct as prematurely to let the cat out of the investigative bag." *Id.* In short, we will not allow the cure, Exemption 7(A), to "become the carrier of the disease." *Id.*

The writ of mandamus prayed for is issued. The orders directing the production of a *Vaughn* index are vacated, and the case is remanded to the district court for further proceedings consistent with this opinion.

McMILLIAN, Circuit Judge, with whom RICHARD S. ARNOLD, Chief Judge, joins, dissenting.

"Free people are, of necessity, informed; uninformed people can never be free." Sen. Judiciary Comm., Freedom of Information, 88th Cong., 1st Sess. 3 (1963) (remarks of Sen. Edward Long).

As discussed below, although I agree with much of the analysis in the majority opinion, I do not agree that the district court exceeded the scope of its authority when it ordered the Department of Justice (hereinafter the government) to prepare a *Vaughn* index of FBIHQ file 9–60052, the FBI's investigatory file concerning the investigation into the disappearance and presumed murder of Teamsters president Jimmy Hoffa in July 1975. Accordingly, I would deny the petition for writ of mandamus.

**COLLATERAL ORDER**

First, I do not agree that we have appellate jurisdiction to review the government's appeal, No. 91–2164. As discussed below, the term *"Vaughn* index" is derived from *Vaughn v. Rosen,* 157 U.S.App.D.C. 340, 484 F.2d 820 (1973), *cert. denied,* 415 U.S. 977, 94 S.Ct. 1564, 39 L.Ed.2d 873 (1974), and a *Vaughn* index is typically a detailed affidavit which "permit[s] the court system effectively and efficiently to evaluate the factual nature of disputed information." *Id.,* 484 F.2d at 826. In my view, the district court order in

the present case requiring the preparation of a *Vaughn* index was essentially a discovery order in this FOIA litigation. Discovery orders are "generally not appealable as collateral orders even when they are attacked as burdensome." *Hinton v. Department of Justice,* 844 F.2d 126, 131 (3d Cir.1988). The *Vaughn* index is not an end in itself; by definition, the *Vaughn* index does not itself disclose anything of substance. "[A] *Vaughn* index does not accord a requester any of the substantive relief [the requester] seeks.... Rather, the [*Vaughn*] index is a tool for determining the requester's substantive rights [under FOIA]." *Id.* at 130.

It is true that "[the Freedom of Information Act (FOIA) ] was not intended to supplement or displace rules of discovery." *John Doe Agency v. John Doe Corp.,* 493 U.S. 146, 153, 110 S.Ct. 471, 475, 107 L.Ed.2d 462 (1989). However, the present case involves only the FOIA requests themselves. It is a discrete civil action. The FOIA is not being used here as a discovery tool to supplement or displace discovery in connection with other litigation, for example, other criminal or civil proceedings. In discovery proceedings the issue is whether the information sought is relevant and necessary; however, in FOIA litigation the only issue is whether the agency has properly withheld the information sought under one of the specific statutory exemptions. *See, e.g., North v. Walsh,* 279 U.S.App.D.C. 373, 881 F.2d 1088, 1095 (1989) (FOIA request seeking documents from Office of Independent Counsel concerning ongoing criminal investigation of plaintiff).

I also do not agree that the district court order is appealable under the final collateral order exception. *Hinton v. Department of Justice,* 844 F.2d at 131. Collateral orders are appealable if (1) the order conclusively decides the disputed issue, (2) the issue is entirely distinct from the merits of the case, and (3) the order would be effectively unreviewable if the appeal were postponed until the issuance of a final order. *Coopers & Lybrand v. Livesay,* 437 U.S. 463, 468, 98 S.Ct. 2454, 2457, 57 L.Ed.2d 351 (1978); *Cohen v. Beneficial Industrial Loan Corp.,* 337 U.S. 541, 546, 69 S.Ct. 1221, 1225, 93 L.Ed. 1528 (1949). At this point in the present case, the district court has only ordered the preparation of a *Vaughn* index and has yet to

conclusively decide the merits of the government's claim of exemption under Exemption 7(A). The district court agreed to consider the *Vaughn* index *in camera;* the district court has not even decided whether or not to disclose the *Vaughn* index itself to the public or counsel for plaintiff. As noted above, the preparation of a *Vaughn* index "does not accord a requester any of the substantive relief [he or she] seeks." *Id.* at 130. The substantive relief the requester wants is access to the government's records, not the preparation of or access to the *Vaughn* index of those records. The preparation of a *Vaughn* index is only a preliminary or preparatory step. As was noted by the panel majority opinion, the present case

> is unique because it is not a review of a district court's order that documents be disclosed, nor is it a review of a district court's decision that documents are exempt from disclosure. [The present] case asks us to determine what a district court may do while deciding whether documents are or are not exempt from disclosure.

950 F.2d at 533.

## MANDAMUS

In the present case the government does not argue the district court abused its discretion in ordering a *Vaughn* index; the government argues the district court lacked the authority to order a *Vaughn* index. The government has thus presented the issue in terms of the power or authority of the district court. The government argues that Exemption 7(A) is different from other FOIA exemptions and that the district court can never require the preparation of a *Vaughn* index when the government agency invokes Exemption 7(A). As noted by the panel majority opinion, this is a novel argument that squarely challenges the authority of the district court to act. 950 F.2d at 532. Because the government has presented its argument in terms of the district court's authority to act, and not in terms of whether or not the district court abused its discretion, I agree that, under these unique circumstances, we have jurisdiction to review the district court order by petition for writ of mandamus.

## THE *VAUGHN* INDEX

A healthy distrust of government, and a corresponding suspicion of government se-crecy, is the underlying premise of FOIA. FOIA "seeks to permit access to official information long shielded unnecessarily from public view and attempts to create a judicially enforceable public right to secure such information from possibly unwilling official hands." *EPA v. Mink,* 410 U.S. 73, 80, 93 S.Ct. 827, 832, 35 L.Ed.2d 119 (1973). "The basic purpose of FOIA is to ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed." *NLRB v. Robbins Tire & Rubber Co.,* 437 U.S. 214, 242, 98 S.Ct. 2311, 2327, 57 L.Ed.2d 159 (1978) (*Robbins*). FOIA's "general philosophy [is] 'full agency disclosure unless information is exempted under clearly delineated statutory language.'" *Department of Air Force v. Rose,* 425 U.S. 352, 360–61, 96 S.Ct. 1592, 1599, 48 L.Ed.2d 11 (1976), *citing* S.Rep. No. 813, 89th Cong., 1st Sess. 3 (1965). "'Congress realized that legitimate governmental and private interests could be harmed by release of certain types of information,' and therefore provided the 'specific exemptions under which disclosure could be refused.'" *John Doe Agency v. John Doe Corp.,* 493 U.S. at 152, 110 S.Ct. at 475, *citing FBI v. Abramson,* 456 U.S. 615, 621, 102 S.Ct. 2054, 2059, 72 L.Ed.2d 376 (1982). The statutory exemptions are to be narrowly construed, *Department of Air Force v. Rose,* 425 U.S. at 361, 96 S.Ct. at 1599, the district courts review the claim of exemptions de novo, and the burden of justifying nondisclosure, that is, the burden of establishing that the information requested is protected from disclosure by a specific exemption, is on the agency. *See* 5 U.S.C. § 552(a)(4)(B).

As noted by the panel majority opinion, the district court's responsibility to review de novo the government's claimed exemptions is complicated by the fact that "ordinarily a government agency, and not the court, has access to the documents in question." 950 F.2d at 533. "The party requesting the disclosure must rely upon his [or her] adversary's representations as to the material withheld, and the court is deprived of the benefit of informed advocacy to draw its attention to the weaknesses in the withhold-

ing agency's arguments." *Wiener v. FBI,* 943 F.2d 972, 977 (9th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 3013, 120 L.Ed.2d 886 (1992). This is the precise difficulty at the heart of the present case and it is also what precipitated the invention of the *Vaughn* index.

> [I]t is anomalous but obviously inevitable that the party with the greatest interest in obtaining disclosure is at a loss to argue with desirable legal precision for the revelation of the concealed information. Obviously, the party seeking disclosure cannot know the precise contents of the documents sought; secret information is, by definition, unknown to the party seeking disclosure....
>
> In a very real sense, only one side to the controversy (the side opposing disclosure) is in a position confidently to make statements categorizing information, and this case provides a classic example of such a situation.

*Vaughn v. Rosen,* 484 F.2d at 823–24. Thus, in FOIA litigation, the plaintiff, the party seeking disclosure, is placed in the awkward and frustrating position of speculating about the likely contents of documents that it has never seen.

In *Vaughn v. Rosen* the plaintiff was a law professor doing research on the Civil Service Commission. The professor sought disclosure of the evaluations of certain government agencies' personnel management programs and certain other special reports of the Bureau of Personnel Management. The government claimed that the documents contained information of a personal nature about the government agency employees and that disclosure would constitute an invasion of the employees' personal privacy. The court of appeals noted that the plaintiff's lack of knowledge necessarily meant that he quite literally did not know, and therefore could not inform the court, whether or not the government's factual characterization of the documents as containing information of a personal nature was accurate. *Id.,* 484 F.2d at 824. The court of appeals observed that the plaintiff's lack of knowledge not only hampered his ability to litigate in the district court (he was essentially limited to arguing that the exemption is very narrow and that the general nature of the documents sought made it unlikely that they contained personal information), but

> [t]his lack of knowledge by the party seeking disclosure seriously distorts the traditional adversary nature of our legal system's form of dispute resolution. Ordinarily, the facts relevant to a dispute are more or less equally available to adverse parties. In a case arising under the FOIA this is not true, ... and hence the typical process of dispute resolution is impossible....
>
> The problem is compounded at the appellate level. In reviewing a determination of exemption, an appellate court must consider the appropriateness of a trial court's characterization of the factual nature of the information. Frequently trial courts' holdings in FOIA cases are stated in very conclusory terms, saying simply that the information falls under one or another of the exemptions to [FOIA]. An appellate court, like the trial court, is completely without the controverting illumination that would ordinarily accompany a request to review a lower court's factual determination; it must conduct its own investigation into the document. The scope of inquiry will not have been focused by the adverse parties and, if justice is to be done, the examination must be relatively comprehensive. Obviously, an appellate court is even less suited to making this inquiry than is a trial court.

*Id.,* 484 F.2d at 824–25. The FOIA requester in the present case is in the same position as the law professor in *Vaughn v. Rosen.*

The *Vaughn v. Rosen* court concluded that, contrary to the intent of Congress, FOIA "actually *encourage[d]* the Government to contend that large masses of information are exempt, when in fact part of the information should be disclosed." *Id.,* 484 F.2d at 826. Not only did FOIA contain "no inherent incentives that would affirmatively spur government agencies to disclose information," *id.,* but "since the burden of determining the justifiability of a government claim of exemption currently falls on the court system, ... [FOIA] encourage[d] agencies automatically to claim the broadest possible grounds for exemption for the greatest amount of infor-

mation." *Id.* These concerns compelled the *Vaughn v. Rosen* court to develop what has become known as the *Vaughn* index in order to "(1) assure that a party's right to information is not submerged beneath governmental obfuscation and mischaracterization, and (2) permit the court system effectively and efficiently to evaluate the factual nature of disputed information." *Id.*

As noted by the panel majority opinion, [t]here is no prescribed form for a *Vaughn* index; any form is acceptable as long as the affidavits provided by the government assist the court's efforts to decide the issues at hand. Regardless of form, however, certain components are integral parts of any *Vaughn* index. Specifically, *Vaughn* indices usually communicate descriptions of each and every document contained in the file, including a general description of each document's contents and general facts about their creation (such as date, time, and place). For each document, the exemption claimed by the government is identified, and an explanation as to why the exemption applies to the document in question is provided.

950 F.2d at 533 (citations omitted). "Specificity is the defining requirement of the *Vaughn* index and affidavit; affidavits cannot support summary judgment [upholding the government's claimed exemption] if they are 'conclusory, merely reciting statutory standards, or if they are too vague or sweeping.'" *King v. United States Department of Justice,* 265 U.S.App.D.C. 62, 830 F.2d 210, 219 (1987) (footnotes omitted). "To accept an inadequately supported exemption claim 'would constitute an abandonment of the trial court's obligation under the FOIA to conduct a *de novo* review.'" *Id.* Whether the government's affidavit or affidavits constitute an adequate *Vaughn* index is a question of law reviewed de novo. *Wiener v. FBI,* 943 F.2d at 978, *citing Binion v. United States Department of Justice,* 695 F.2d 1189, 1193 (9th Cir.1983).

Preparation of the *Vaughn* index does more than require the government agency to review and classify the documents in question. The resulting *Vaughn* index is more than a litigation tool that the FOIA requester can use to challenge the government's with-

holding of those documents. It is important to remember that requiring the government agency to prepare a *Vaughn* index

forces the government to analyze carefully any material withheld, it enables the trial court to fulfill its duty of ruling on the applicability of the exemption, and it enables the adversary system to operate by giving the requester as much information as possible, on the basis of which he [or she] can present his [or her] case to the trial court.

*Lykins v. Department of Justice,* 233 U.S.App.D.C. 349, 725 F.2d 1455, 1463 (1984). "The index thus functions to restore the adversary process to some extent, and to permit more effective judicial review of the agency's decision." *Wiener v. FBI,* 943 F.2d at 977–78; *see also Davis v. CIA,* 711 F.2d 858, 861 (8th Cir.1983), *cert. denied,* 465 U.S. 1035, 104 S.Ct. 1307, 79 L.Ed.2d 705 (1984).

## *ROBBINS* DECISION

As has already been discussed, Exemption 7(A) is the law enforcement exemption and provides that disclosure is not required of "matters that are ... investigatory records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information ... could reasonably be expected to interfere with enforcement proceedings." 5 U.S.C. § 552(b)(7)(A). In the present case the government argues the district court lacked the authority to require the preparation of a *Vaughn* index because a *Vaughn* index is not required when Exemption 7(A) is invoked, citing *Robbins,* 437 U.S. at 223–24, 234–36, 98 S.Ct. at 2317–18, 2323. In *Robbins* the FOIA plaintiff was an employer seeking disclosure of witness statements prior to an unfair labor practice hearing. Following a contested representation election, the regional director of the NLRB filed an unfair labor practice charge against the employer for pre-election actions. A hearing was scheduled. Prior to the hearing, the employer sought disclosure of all potential witnesses' statements collected by the NLRB during its investigation. The regional director denied the request on the ground that the witness statements were exempt from disclosure under several FOIA exemp-

tions, in particular Exemption 7(A). The employer appealed to the NLRB General Counsel. However, before the expiration of FOIA's 20–day response period, 5 U.S.C. § 552(a)(4)(B), the employer filed a FOIA action in federal district court, seeking disclosure of the witness statements and an injunction against holding the hearing until the documents had been disclosed. The NLRB argued that witness statements were exempt from disclosure under Exemption 7(A) because their production would interfere with an enforcement proceeding, the pending unfair labor practice hearing. The district court disagreed and ordered the NLRB to produce the witness statements.

The issue whether Exemption 7(A) was generic, or categorical, or case-specific emerged on appeal. The court of appeals rejected the NLRB's categorical or generic approach and concluded that the 1974 legislative history demonstrated that Exemption 7(A) was available only after a specific evidentiary showing of the possibility of actual interference in an individual case. *Robbins Tire & Rubber Co. v. NLRB,* 563 F.2d 724, 728 (5th Cir.1977). The court of appeals rejected the NLRB's arguments that the premature revelation of its case through the production of the witness statements before the hearing was the kind of interference that would justify nondisclosure and that pre-hearing production of witness statements would discourage potential witnesses from making statements at all. *Id.* at 729–31. The court of appeals acknowledged that the possibility of "interference" in the form of witness intimidation by the employer during the period between disclosure of the witness statements to the employer and the hearing, but held that the NLRB had failed to demonstrate that the witness statements were exempt because it had not introduced any evidence that witness intimidation was likely in this particular case. *Id.* at 732. *But see, e.g., Title Guarantee Co. v. NLRB,* 534 F.2d 484, 491 (2d Cir.) (holding statements of employees and union representatives obtained in NLRB investigation exempt from disclosure under Exemption 7(A) until completion of administrative and judicial proceedings), *cert. denied,* 429 U.S. 834, 97 S.Ct. 98, 50 L.Ed.2d 99 (1976).

The Supreme Court reversed. The Court endorsed the generic, or categorical, interpretation of Exemption 7(A) and held that "witness statements in pending unfair labor practice proceedings are exempt from FOIA disclosure at least until completion of the Board's hearing." 437 U.S. at 236, 98 S.Ct. at 2324. First, the Court noted that the language of the exemption, specifically the plural reference to "enforcement proceedings," suggested that "certain generic determinations" might be made under Exemption 7(A). *Id.* at 224, 98 S.Ct. at 2318. The Court concluded that the early legislative history supported this interpretation, *id.* at 225–26, 98 S.Ct. at 2318–19 (referring to Sen. Humphrey's concerns in 1966 about the need to protect statements of agency witnesses from disclosure prior to agency proceedings, specifically witnesses in unfair labor practice proceedings), as well as the reported decisions until 1974. *Id.* at 226, 98 S.Ct. at 2319 (citing cases). The Court also noted that the legislative history of the 1974 amendment of Exemption 7 showed "[t]hat the 1974 Congress did not mean to undercut the intent of the 1966 Congress with respect to Senator Humphrey's concern about interference with pending NLRB enforcement proceedings." *Id.* at 232, 98 S.Ct. at 2322; *see id.* at 226–32, 98 S.Ct. at 2319–22 (noting background of 1974 amendment, particularly Congressional disapproval of several D.C.Cir. decisions upholding "blanket exemptions" for all government records contained in investigatory files that had been compiled for law enforcement purposes; 1974 amendment changed scope of exemption from "files" to "records" and enumerated specific purposes and objectives of exemption).

The Court concluded that "Congress did not intend to prevent the federal courts from determining that, with respect to particular kinds of law enforcement proceedings, disclosure of particular kinds of investigatory records while a case is pending would generally 'interfere with enforcement proceedings.'" *Id.* at 236, 98 S.Ct. at 2324. The Court agreed that "[t]he most obvious risk of interference with enforcement proceedings in this context is that employers or, in some cases, unions will coerce or intimidate employees and others who have given statements, in an effort to make them change their testimony

or not testify at all." *Id.* at 239, 98 S.Ct. at 2325. In addition, prehearing disclosure of witnesses' statements "would disturb the existing balance of relations in unfair labor practice proceedings," *id.* at 236, 98 S.Ct. at 2324, especially since, "[h]istorically, the NLRB has provided little prehearing discovery in unfair labor practice proceedings and has relied principally on statements such as those sought here to prove its case." *Id.* The Court also noted that the use of FOIA as the mechanism for providing a litigant with earlier and greater access to the agency's case than the litigant would otherwise have was likely to cause substantial delays in the administrative process and thus interfere with enforcement proceedings. *Id.* at 237–38, 98 S.Ct. at 2324.[5]

## APPLICATION OF EXEMPTION 7(A)

I do not think *Robbins* supports the government's argument in the present case. As noted by the panel majority opinion, after *Robbins* endorsed the generic, or categorical, application of Exemption 7(A), many courts of appeals

> altered their views on the need for a *Vaughn* index when Exemption 7(A) is involved. The rationale underlying these post-*Robbins* decisions has been that a *Vaughn* index is unnecessary because the government is permitted to demonstrate interference based on categories of documents and need not demonstrate interference with enforcement proceedings on a document-by-document basis. *E.g., Church of Scientology v. IRS,* 792 F.2d 146, 152 (D.C.Cir.1986) (Scalia, J.); *Barney v. IRS,* 618 F.2d 1268, 1273 (8th Cir. 1980) (per curiam). Moreover, in each of these cases, the appellate court was reviewing a district court's decision *not* to require a *Vaughn* index when the govern-

ment had already provided adequate descriptions of the documents sought, as well as adequate explanations as to how the particular types of documents at issue could interfere with law enforcement proceedings.

> At no time, however, has an appellate court suggested that *Robbins* alters the district court's statutory obligation to review the claimed exemption's applicability. *Robbins* does not allow for exemption merely because documents appear in a law enforcement agency's file. When an agency relies upon *Robbins* and offers categorical justifications for exemption under Exemption 7(A), the agency must still review each document individually.... The district court is well within its authority to verify that the agency has actually examined and properly categorized each document. It may accomplish this task by requiring an affidavit that describes, on a document-by-document basis, the documents in the file, the categories into which each document is placed, and a description of how disclosure of each category of documents might interfere with enforcement proceedings. *Robbins* merely prevents a district court from ordering a document-by-document explanation as to how each document will interfere with enforcement proceedings. In other words, though the district court cannot require the government to justify its decision to deny disclosure on a document-by-document basis, it can require the government to justify its chosen categorization on a document-by-document basis.

950 F.2d at 533–34 (parenthetical omitted from *Barney* citation; citations omitted; footnote omitted).

In *Robbins* it was not disputed that the documents in question were in fact witness

---

**5.** As noted by the majority opinion, at 1307 *supra,* the Supreme Court recently affirmed the *Robbins* categorical approach in *United States Dep't of Justice v. Landano,* —— U.S. ——, ——, —— ——, 113 S.Ct. 2014, 2021, 2023–24, 124 L.Ed.2d 84 (1993) (rejecting blanket exemption for "all" FBI sources as confidential for purposes of Exemption 7(D); however, "more narrowly defined circumstances" may support inference of confidentiality, for example, generic category of paid informants). *See also United States Dep't of Justice v. Reporters Comm. for Freedom of the Press,* 489 U.S. 749, 109 S.Ct. 1468, 103 L.Ed.2d

774 (1989) (holding "rap sheets" constituted generic category of law enforcement records which could reasonably be expected to constitute an unwarranted invasion of privacy within meaning of Exemption 7(C)). I do not dispute the continued validity of the *Robbins* categorical approach. What is in dispute in the present case is whether, as a threshold matter, we know enough about the nature of the records in question to review the accuracy of the government's classification of the records into generic categories. I submit that we do not.

statements. Nor was it disputed in *Robbins* that, at least in general, disclosure of witness statements prior to the unfair labor practice proceeding could interfere with that proceeding. What was disputed was whether the agency could rely on that generality or whether the agency had to make a specific factual showing that disclosure of those particular witness statements would interfere with that particular proceeding. Similarly, in *Barney v. IRS,* there was no dispute about the categorization of the documents in question; the district court and this court were "satisfied that the government's affidavits adequately described the documents, the categories to which they belonged, and the possible harms of disclosure." 950 F.2d at 534, *citing* 618 F.2d at 1272–73 (witness statements, documentary evidence, IRS agent's work papers, internal agency memoranda). *See Curran v. Department of Justice,* 813 F.2d 473, 476 (1st Cir.1987) (apparent from agency affidavit that agency conducted individualized, document-by-document search, subdivided records into types and then into functional categories).

The same cannot be said in the present case. Here, the parties disputed not only the nature of the individual documents, but also the type of category used by the government, as well as the appropriate categorization or placement of the documents into particular categories. This basic lack of agreement about the nature and categorization of the documents distinguishes the present case from *Robbins* and *Barney.*

In the present case, the district court required preparation of a *Vaughn* index, and in response the government filed several public affidavits or declarations and a document which it captioned a "categorical index." The district court was clearly not satisfied with the government's response. As noted by the penal majority opinion, "[t]he district court's dissatisfaction [with the government's response was] understandable given the government's blanket assertion that all 13,800 documents, accumulated over a 15–year span, fit neatly into nine categories described over the course of five pages." *Id.* at 535; *cf. Wiener v. FBI,* 943 F.2d at 978 (noting the FBI's use of "boilerplate" explanations drawn from a "master" FOIA response).

Furthermore, the district court believed that the FOIA requester had raised serious questions about the validity of the government's search and categorization of the documents. *Id. Compare Curran v. Department of Justice,* 813 F.2d at 476 (district court found no reason to impugn good faith of agency). The district court also concluded that it needed additional information "about each document, not only to verify that the government has fulfilled its obligation to examine each document, but also to enable it to understand or challenge the categories created by the government." 950 F.2d at 535.

By requiring the preparation of a *Vaughn* index in the present case, the district court was attempting to develop an adequate record. Only the government knows what is in the Hoffa file; the FOIA requester and the district court do not know, much less this court. As noted above, the record indicates, only that the file consists of at least 13,800 pages in 70 volumes; the file is almost certainly larger now. Some of these pages are public source material which the government has already made available to the FOIA requester. According to the categorical index, which consists of a total of five double-spaced pages, each and every page falls within one of nine categories, the disclosure of which could reasonably be expected to interfere with law enforcement proceedings. The district court's dissatisfaction with the categorical index was directed more at the procedural and substantive accuracy of the government's classification of individual pages than at the categories identified by the government. (The majority opinion expresses no opinion on the sufficiency of the Baker affidavit and the categorical index. *See* supra at 1309 n. 4 *supra.*) In any event, as noted by the panel majority opinion, the district court's concern about whether all the documents are described by the government's categories cannot be resolved merely by requiring more specific or more detailed categories. 950 F.2d at 535.

In my view, assuming for purposes of analysis that the government's categories are sufficiently specific, the district court acted within its authority in requiring the government to verify that it had actually examined and accurately categorized each document.

Indeed, it was its duty to do so. *King v. United States Department of Justice,* 830 F.2d at 219 (acceptance of inadequately supported exemption claim "would constitute abandonment of the trial court's obligation under FOIA to conduct a *de novo* review"). The district court did not know (and we do not know) whether the government's categorization of the documents was correct or, for that matter, whether the government had examined each document individually. The district court decided that, without a *Vaughn* index, it could not verify whether there was a correlation between the documents and the categories. Because all the documents necessarily fall into exempt categories, unless the district court can verify that each document has been examined and accurately categorized, the *Robbins* categories will become "no more than smaller versions of the 'blanket exemptions' disapproved by Congress in its 1974 amendments of FOIA." *Bevis v. Department of State,* 255 U.S.App.D.C. 347, 801 F.2d 1386, 1389 (1986), *citing Robbins,* 437 U.S. at 236, 98 S.Ct. at 2324.

As noted by the panel majority opinion, preparation of a *Vaughn* index in the present case does not require the government to demonstrate document-by-document how disclosure of each document could reasonably be expected to interfere with pending law enforcement proceedings. 950 F.2d at 535. Like the district court and the panel majority, I accept the category-by-category approach. What I do not accept is the government's conclusory assertions that each and every document in the Hoffa file falls within one of its nine categories. In other words, what is disputed, and what the district court sought to verify by requiring the preparation of a *Vaughn* index, is whether the government's categorization of each document is accurate. Without such a record, the FOIA requester cannot test the government's claim of exemption, the district court cannot conduct the required de novo review of the government's decision not to disclose (without undertaking the arduous task of actually reviewing the documents itself), and this court cannot conduct a meaningful review of the district court's decision.

It should be noted that the district court could decide to modify its order requiring the government to prepare a *Vaughn* index for the entire Hoffa file. In the proceedings

before the district court, the government argued that preparation of a *Vaughn* index for the entire Hoffa file would be inordinately time-consuming and would necessarily divert scarce resources from other law enforcement activities. The district court could require the government to prepare a *Vaughn* index for a representative sample of the documents in the Hoffa file. "Representative sampling is an appropriate procedure to test an agency's FOIA exemption claims when a large number of documents are involved." *Bonner v. United States Department of State,* 289 U.S.App.D.C. 56, 928 F.2d 1148, 1151 (1991); *accord The Washington Post v. United States Department of Defense,* 766 F.Supp. 1, 15 (D.D.C.1991).

Alternatively, the district court could decide to conduct an *in camera* review of a representative sample of the documents in the Hoffa file. *In camera* review is discretionary. *Robbins,* 437 U.S. at 224, 98 S.Ct. at 2318. Limited *in camera* review might be particularly helpful in the present case. "[A] finding of bad faith or contrary evidence is not a prerequisite to *in camera* review; a trial judge may order such an inspection 'on the basis of an uneasiness, on a doubt [the judge] wants satisfied before [taking] responsibility for a de novo determination.'" *Meeropol v. Meese,* 252 U.S.App.D.C. 381, 790 F.2d 942, 958 (1986), *citing Ray v. Turner,* 190 U.S.App.D.C. 290, 587 F.2d 1187, 1195 (1978). One district judge and one appellate panel have examined *in camera* a selection *made by the government* of the documents contained in the Hoffa file and concluded that those documents established that the criminal investigation into Hoffa's disappearance is active and continuing and that production of those records could reasonably be expected to interfere with enforcement proceedings. *Dickerson v. Department of Justice,* No. 90–CV–60045–AA, 1991 WL 337422, slip op. at 5–6 (E.D.Mich. July 31, 1991), *aff'd,* 992 F.2d 1426 (6th Cir.1993).

For the reasons set forth above, I would hold the district court has the authority to require the government to prepare a *Vaughn* index even when Exemption 7(A) is invoked

and would deny the government's application for writ of mandamus.